**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x

**MICHAEL SABELLA,**                                            Docket No.:
                                                                06 – CV – 6566 (NG)(SMG)
                        **Plaintiff,**

        **v.**

**AMERICAN STEVEDORING, INC., and**
**LOCAL 1814 INTERNATIONAL**
**LONGSHOREMAN'S ASSOCIATION, AFL-CIO,**

                        **Defendants.**

----------------------------------------------------------------------x

## AMENDED JOINT PRE-TRIAL ORDER

**WHEREAS,** the parties having agreed to the following, it is hereby **ORDERED** as follows:

### I

### FULL CAPTION OF THE CASE

Michael Sabella v. American Stevedoring, Inc.; and Local 1814 International Longshoreman's Association, AFL-CIO; Docket No. 06-CV-6566 (NG)(SMG)

### II

### TRIAL COUNSEL

For Plaintiff:

Matthew J. Blit, Esq.
Russell S. Moriarty, Esq.
Justin S. Clark, Esq.
LEVINE & BLIT, PLLC
*Attorneys for Plaintiff*
350 Fifth Avenue
Suite 3601
New York, New York 10118
Telephone (212)967-3000
Fax (212)967-3010

For Defendants:

Janine G. Bauer, Esq.
Szaferman Lakind, P.C.
*Attorneys for Defendant ASI*
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
Telephone (609) 275-0400
Fax (609) 275-4511
jbauer@szaferman.com

John P. Sheridan, Esq.
Marrinan & Mazzola Mardon, P.C.
*Attorneys for Defendant Local 1814, ILA*
26 Broadway, 17th Floor
New York, New York 10004
Telephone (212) 425-3240
Fax (212) 943-6649
jsheridan@mmmpc.com

### III

### SUBJECT MATTER JURISDICTION

This civil action is brought to redress multiple deprivations by the Defendants of Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. as amended; the Civil Rights Act of 1991; the New York State Executive Law Section 290 et seq; and, the New York City Administrative Code section 8-107. In addition, the Plaintiff has also asserted claims arising out of a breach of the Duty of Fair Representation as against Local 1814.

Jurisdiction is conferred on the Court by 28 U.S.C. 1331. The Court has pendent and supplemental jurisdiction pursuant to 28 U.S.C. 1367 over the Plaintiff's State and local claims.

Venue in the Eastern District of New York is appropriate pursuant to 28 U.S.C. § 1391 inasmuch as alleged acts and transactions occurred in this District.

# IV

## SUMMARY OF CLAIMS AND DEFENSES

### PLAINTIFF'S CLAIMS

1.      Michael Sabella ("Plaintiff" or "Mr. Sabella") is a forty-eight (48) year-old Italian Catholic male. Plaintiff was hired as a Longshoreman in September 2002 by American Stevedoring Inc ("ASI") and was subjected to sexual harassment perpetrated by Salvatore Buzzetta ("Buzzetta"), hostile work environment and retaliation.

2.      At all relevant times, Mr. Buzzetta was employed by ASI as a Machine Boss and as such, served as Plaintiff's supervisor and had the authority to recommend or undertake tangible employment decisions and/or control the terms and conditions of Mr. Sabella's employment.

3.      In or about 2005, Mr. Buzzetta sexually harassed Plaintiff by grabbing Mr. Sabella's genitalia and touching his rear end. Mr. Buzzetta proceeded to attack Plaintiff by throwing him over a desk and inserting his finger inside of Plaintiff's anus. Mr. Sabella was embarrassed, disgusted, and insulted by Mr. Buzzetta's sexual harassment and attempted to resist the aforementioned harassment.

4.      Subsequently, the Plaintiff complained about Mr. Buzzetta's conduct to Lou Pernice ("Pernice"), President of the Union, and Sabato Catucci ("Catucci"), the President of ASI.

5.      ASI failed to take any remedial action and instead, retaliated against Plaintiff by subjecting him to adverse employment actions in the terms and conditions of his employment. Among other things, the retaliation was intended for the Plaintiff to withdraw his complaints of sexual harassment and to discourage or prevent future complaints from the Plaintiff or other employees.

6.      Mr. Sabella had witnessed discrimination against black and Hispanic employees due to their national origin and race. On several occasions, Mr. Sabella complained about discrimination to ASI's management and the Union to no avail. Mr. Sabella's protected complaints caused further retaliation and adverse employment actions taken against him. Mr. Sabella was harassed, threatened, suspended, and terminated.

7.      On or about July 6, 2006, Plaintiff checked in with Mr. Buzzetta and was ready to work. Buzzetta responded with hostility and began to yell, scream and curse at Mr. Sabella in the presence of co-workers. Later that day, Mr. Sabella noticed an unsafe condition and reported it. In response, Plaintiff was told to check out early and that he would receive a "left work debit." In addition to the above, Mr. Sabella received a letter of warning from ASI.

8.      On or about July 12, 2006, Plaintiff was removed from operating a toploader and was told that it was due to the fact that he had to be retrained. Another employee, who was also told that he had to be retrained, was allowed to return and operate the toploader without being retrained. Therefore, on July 13, 2006, Mr. Sabella attempted to file a grievance due to the discrimination and retaliation against the employer. Frank Agusto, a Union Delegate, became aware of the complaint. Mr. Agusto verbally attacked the Plaintiff and threatened that he would see to it that the Plaintiff pays for attempting to file a grievance. On or about July 27, 2006, Equal Employment Opportunity Commission ("EEOC") issued a letter due to the concerns about Mr. Sabella's safety and well-being. The EEOC recognized that the Union had failed and refused to assist Mr. Sabella with respect to grievances. Notwithstanding the involvement of the EEOC, Buzzetta continued to take adverse employment actions against the Plaintiff in retaliation for his protected complaint of sexual harassment.

9.      On August 5, 2006, Plaintiff complained to the Waterfront Commission regarding retaliation.

10.     Mr. Sabella became aware that individuals from the employer and the Union made threats to Plaintiff's co-worker if they did not sign a petition to get Mr. Sabella removed from his position.

11.     On August 8, 2006, Mr. Sabella was present at work when a co-worker who was going to get coffee asked if he wanted anything. Mr. Sabella replied that he would like a cup of coffee with sugar.  Mr. Sabella shortly thereafter received and answered a brief telephone call from his co-worker for a clarification of his order.  Mr. Buzzetta observed Plaintiff respond and demanded that he check out, as a result of which Mr. Sabella lost sixteen (16) hours of pay. ASI should not have let Mr. Buzzetta supervise Mr. Sabella after he had complained of sexual harassment.

12.     In or about September 2006, Plaintiff was issued a warning letter without merit.

13.     Ultimately, on November 15, 2006, Mr. Sabella was suspended from his position of employment.

## ADVERSE EMPLOYMENT ACTIONS

14.     In February 2005 and after Mr. Buzzetta's sexual assault, Mr. Sabella decided to transfer to Bayonne. However, Mr. Sabella had no choice but to return to Brooklyn due to the lack of work at Bayonne and the fact that if he did not return to Brooklyn, he would lose his seniority. Thus, on February 6, 2006, Mr. Sabella filed an application to return to ASI.

15.     On May 1, 2006, Mr. Sabella filed a handwritten complaint due to the constant harassment from management at ASI. After he complained that he was bypassed on toploader, Mr. Buzzetta forced another longshoreman, Michael Suarez, to get off the toploader for Mr. Sabella. Mr. Sabella asked Mr. Suarez a question about the toploader and Mr. Buzzetta told

Mr.Suarez that if he showed him anything Mr. Buzzetta would check him out. Then, Mr. Sabella was told that he was too slow on the toploader.

16.     The same day, Mr. Sabella was moved to drive a hustler and then was blocked in by vehicles operated by ASI management. Due to the fact that Mr. Sabella complained about Mr. Buzzetta's sexual harassment in the past to no avail, Plaintiff complained to Mr. Sabato Catucci who laughed at Mr. Sabella.   ASI denies this allegation.

Absenteeism Suspension

17.     On May 3, 2006, Mr. Sabella was suspended for alleged absenteeism.

18.     On May 17, 2006, Mr. Sabella submitted a handwritten complaint that on May 4, 2006, he was denied the opportunity to work after 1:00 pm, while other employees with less seniority were allowed to work. When Mr. Sabella asked for a job he was told "no." Subsequently, Plaintiff received a warning letter dated May 17, 2006 stating that he had disobeyed the rules and that ASI would not seek to retrain him on the toploader.

19.     On July 6, 2006, Mr. Sabella checked in and Mr. Buzzetta assigned him a truck; however, when Plaintiff went to the parking lot to get the truck, he learned that it was missing. Mr. Sabella returned and told Mr. Buzzetta that the truck was missing. In response, Mr. Buzzetta yelled and cursed at the Plaintiff, and threatened to check Mr. Sabella out. Plaintiff was embarrassed and felt belittled by Mr. Buzzetta in front of his co-workers. Mr. Sabella proceeded to look for the truck around the pier and found it shortly after in the possession of another longshoreman. Mr. Sabella claimed his truck, but noticed that there were X-Ray machines and that Mr. Catucci was waving the longshoremen to proceed through the machines. Mr. Sabella approached Mr. Buzzetta to address his concerns about the X-Ray machine; however, Mr. Buzzetta ignored his concerns and told Plaintiff to go home. Mr. Catucci came over and threatened Mr. Sabella that if

he left, he would receive a "left work debit." Plaintiff then used a co-worker's phone and called "311" who connected him to OSHA. Mr. Sabella explained his concerns to which a representative of OSHA responded that Mr. Sabella could not be checked out for addressing an issue with a supervisor. Subsequently, a representative of OSHA connected Mr. Sabella to 911 and the NYPD came. At no point did Mr. Sabella stop the vessel from working. A U.S. Customs Border Protection officer explained to him that the machine was a detector and did not emit radiation. Mr. Sabella received a Letter of Warning based on the aforementioned incident.

20.     On July 12, 2006, Mr. Sabella was removed from toploader and was told that he would have to be retrained before he is allowed to go back to work on the toploader. Shortly after, Mr. Sabella received a letter from ASI stating that he would not be allowed to retrain or operate the toploader; however, other employees with less seniority and experience were allowed to operate the toploader. In addition, another longshoreman who was removed from the toploader was permitted back on without being retrained. As a result of the foregoing, Mr. Sabella lost income and was singled out in the terms and conditions of his employment.

21.     On August 8, 2006, Mr. Sabella was present at work when a co-worker who was going to get coffee asked if he wanted anything. Mr. Sabella replied that he would like a cup of coffee with sugar. Mr. Buzzetta observed Plaintiff ask for a cup of coffee and demanded that he check out, as a result of which Mr. Sabella lost sixteen (16) hours of pay.

22.     On August 9, 2006, Mr. Sabella filed a grievance that he was hired as a hustler driver at Pier 78 for a barge operation that ended as a half day. Other employees with less seniority from the drivers list were guaranteed an eight (8) hour day.

23.     On September 7, 2006, Mr. Sabella filed a grievance that on August 7th and August 10th he was bypassed on the toploader and lost wages. Mr. Sabella was also bypassed on a barge on

August 17th and August 25th.  Mr. Buzzetta was the ASI supervisor assigning jobs and duties on these dates.

24.     On September 18, 2006, Mr. Sabella filed a grievance that on the week ending on September 17th he lost four (4) regular hours of work because he was bypassed on the toploader.

25.     On October 13, 2006, Mr. Sabella submitted a handwritten note dated October 4, 2006, pertaining to an incident when he was accused of attempting to run over and kill Nick Vitale. Mr. Sabella filed a report with the Waterfront Police because he feared for his safety and his job. Inquiries pertaining to the aforementioned incident were held in Mr. Catucci's office instead of at the Waterfront Commission which would have been the appropriate venue.

26.     On November 15, 2006, Mr. Sabella received a suspension letter from ASI.

27.     On March 7, 2007, a grievance was filed to James P. Melia, a Labor Adjuster that stated that on November 15, 2006, Mr. Sabella was removed from the pier list pending an investigation of allegations of threat and violence. Mr. Sabella had no knowledge of the investigation or his removal from the pier list. The Union breached its Duty of Fair Representation by rendering a decision at the Pier Level Hearing on May 8, 2007, that ASI acted appropriately and had just cause to suspend Mr. Sabella from employment. In addition to the above, the Union agreed that Mr. Sabella should remain suspended from employment with ASI.

28.     On January 8, 2007, Mr. Sabella received a notice that he was being banned from the New York Container Terminal. Mr. Sabella was aware that both Mr. Pernice and Mr. Catucci have connections to New York Container Terminal and believed that they asserted their influence to have Mr. Sabella removed from the terminal. Mr. Sabella was also aware that a similarly situated co-worker who had the same allegations brought against him was not banned from the pier. Therefore, Mr. Sabella was singled out in retaliation for his numerous protected

complaints. On February 6, 2007, Mr. Sabella filed a grievance pertaining to being banned from

the New York Container Terminal.  It was not grieved by his Union.


### BRIEF SUMMARY OF DEFENDANT ASI'S DEFENSES

**Mr. Sabella Is Not A Member Of Any Protected Class**

Michael Sabella is a white male born in 1966 and is currently forty-eight (48) years of

age.

**Mr. Buzzetta Was Not Plaintiff's Supervisor**

Mr. Buzzetta was not Plaintiff's supervisor as defined by Vance v. Ball State University,

570 U.S. __ , 133 S. Ct. 2434, 2439 (2013).  Mr. Buzzetta was not capable of taking tangible

employment actions that effected a significant change in employment status, i.e., hiring, firing,

failing to promote, reassignment with significantly different responsibilities, or changing benefits

significantly.  Mr. Buzzetta only assigned machines, saw that the men kept working, and if

Plaintiff was late or left work, reported that to the ASI timekeeper.


**Mr. Buzzetta Did Not Sexually Harass Plaintiff or Discriminate Because of Sex**

ASI denies that Mr. Buzzetta sexually harassed Mr. Sabella.  He began working at

American Stevedoring Inc. (ASI) in September 2002.  He left ASI in February 2005 and

voluntarily returned to ASI in February 2006.  Plaintiff filed a complaint with the EEOC on May

2, 2006, complaining that Sal Buzzetta, the tractor foreman, grabbed Mr. Sabella's genitalia and

inserted a finger into his anus in 2004.  Mr. Buzzetta denies doing this and Mr. Sabella has not

identified any witness to this incident, nor can he identify the date, except that it occurred

sometime between four and eight months prior to Mr. Sabella -leaving ASI, shortly after his toe fracture on February 8, 2005.  Sabella T.250:10-14; 261:12-21.  Mr. Sabella left ASI for reasons having nothing to do with sexual harassment, and never complained of sex assault, despite filing three other grievances in 2004, the same year the alleged contact occurred.  He voluntarily returned to work at ASI in 2006, after he went to work in Bayonne and Elizabeth, during 2005.  Any alleged contact that may have occurred, which Mr. Buzzetta denies, was done in a joking manner.  Buzzetta T.28:4-24.         There was a locker room atmosphere in the break shack at the longshoremen's pier.  The environment was not hostile; it constituted friendly, joking, camaraderie and one-up manship regarding each other's physical attributes, including everything from ethnicity to penis size.  Mr. Sabella explained to Noel Rosengart, attorney for the Waterfront Commission, that the atmosphere at the ASI pier was one in which he and other longshoremen would discuss their sexual encounters out in the open. In fact, Mr. Sabella admitted to telling Ms. Brown, a co-worker, "I only have three inches…I won't satisfy you[.]" Sabella, Waterfront Commission 3/18/05 T.59:3-4.

**Mr. Buzzetta Was Not Motivated By the Desire to Have Sex**

Unless Mr. Buzzetta was homosexual or seeking sexual gratification, which both Mr. Sabella and Mr. Buzzetta deny, Sabella 11/6/07 T.252-254, there was no basis for Plaintiff to believe the single alleged contact was discrimination because of sex.

### Plaintiff's Belief Was Not Reasonable

Plaintiff's belief has to have a reasonable basis, not demonstrated here.

### The Alleged Hostile Work Environment Was Not Severe or Pervasive

Mr. Sabella complains of a single alleged sexual contact by Mr. Buzzetta in 2004; this incident (if it occurred) was not pervasive, severe, or frequent enough to meet the legal

requirements of a hostile work environment, in context, even if it was embarrassing, disgusting, and insulting.  According to Mr. Sabella, he told Mr. Buzzetta that Mr. Buzzetta would have to kill Mr. Sabella if he ever touched him again, and it never recurred.  Sabella T.261:4-7.

### Plaintiff's Failure to Complain Was Unreasonable

Plaintiff never complained of discrimination because of sex, sexual harassment or hostile work environment, orally or in writing, to ASI, Local 1814,  the Waterfront Commission, or any other person or entity, and he never filed a grievance on this subject.  Plaintiff knew how to file grievances, and had done so three times in 2004, the year in which the alleged sexual contact occurred (3/15/04, 3/20/04 6/23/04).  Plaintiff's refusal or failure to complain to ASI in 2004, 2005 and the first four months of 2006 was unreasonable and prevented ASI from correcting the alleged problem.  Had Plaintiff complained, the complaint would have been promptly investigated by ASI or by a neutral person, or under the anti-discrimination, anti-harassment policy that was part of the NYSA-ILA contract (hereafter "Respect and Dignity Policy"), whichwas provided to Plaintiff.  Plaintiff attended a training session on this Policy as well.   ASI has a defense under <u>Farragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 807 (1982), and <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 754-65 (1998).  ASI fulfilled its obligations under <u>Farragher/Ellerth</u> by adopting a policy, providing the policy to the Plaintiff, training the Plaintiff on the policy, and expecting him to present problems for correction.

### Plaintiff Had Opportunities to Complain

Plaintiff filed three grievances in 2004, when the alleged sexual contact/discrimination occurred, none of which mentioned sexual contact, harassment or discrimination.  Plaintiff also had the opportunity to bring up Mr. Buzzetta's or ASI's alleged sexual discrimination and harassment against Plaintiff on March 18, 2005, a full fourteen months before he filed his EEOC

charge.  On March 18, 2005, Mr. Sabella was interviewed by the attorney for the Waterfront Commission on the subject of race and sex discrimination at ASI.  Mr. Sabella not only denied that the female longshoreman, Ms. Brown, was discriminated against by Mr. Buzzetta (3/18/05 Waterfront Commission T.61:21-25; 62:1-9), Mr. Sabella responded to Mr. Rosengart's warning by stating, "How are you going to stop it?  If you think about it, what are you going to do, put a muzzle on every guy's mouth that talks about a date they had?"  T.62:15-18.  At no time did Mr. Sabella say he had been the subject of any sexual contact, discrimination, harassment or hostile work environment, by Mr. Buzzetta or anyone else.

### ASI Did Not Retaliate Against Plaintiff For Filing The EEOC Charge

After filing his EEOC complaint on May 2, 2006, Mr. Sabella tried to get his fellow longshoremen to support his cause against ASI; they refused.  Frustrated, Plaintiff began a "war" against ASI and co-workers by harassing and orally threatening his co-workers, including taping conversations, taking photos and other acts of reprisal and by filing many grievances, most of which Local 1814 denied.  A fellow longshoreman, Nicola Vitale, then filed a complaint under the Respect and Dignity Policy against Mr. Sabella and others for harassment and intimidation for refusing to support what Mr. Vitale considered to be a baseless discrimination claim.  A neutral investigator, Albert Feliu, was hired, and after an investigation, including 16 witness interviews and statements, Mr. Vitale's complaint was sustained.  Mr. Feliu found that Mr. Sabella retaliated against Mr. Vitale for refusing to support his discrimination claim.  Felieu Report at p. 6; LU000572.  ASI then hired Margaret McCausland, an employment attorney, to re-interview the witnesses who gave statements in the Feliu investigation.  The witnesses re-affirmed their statements.  Mr. Sabella's suspension on Nov. 15, 2006 and termination in May

2007, and was not retaliation for his May 2, 2006 EEOC charge.   Mr. Sabella was terminated for cause.

**ASI Did Not Retaliate Against Sabella For Complaining About Discrimination Against Others**

At p. 4 of this Joint Pretrial Order, Mr. Sabella claims ASI retaliated against him by taking adverse employment actions because Mr. Sabella complained about discrimination against black and Hispanic employees.  First, Mr. Sabella never complained to ASI about discrimination against black and Hispanic employees of ASI, although he had the opportunity to do so.  Thus, ASI has a Farragher/Ellerth defense to this retaliation charge.  Second, Mr. Sabella does not identify who discriminated against black and Hispanics or connect ASI management to that allegation in any way, thus no agency is established.  Third, there is no evidence of discrimination by ASI against blacks and Hispanics at ASI's workplace; the witnesses' statements in the Feliu investigation indicate that.  If the alleged protected opposition to the alleged discrimination against others, for which Mr. Sabella now claims he suffered retaliation, consists of the alleged name-calling, then ASI's defense is that the men were joking amongst themselves when they all called each other names relating to their physical attributes, heritage, sexual conquests, etc.  Buzzetta T.14:13-25; T.15:1-4

**No Pretext or False Reason**

Mr. Sabella has shown no evidence of pre-text in the Feliu investigation, nor any false reason for his termination, or discriminatory motive on the part of ASI.

**DEFENSES TO ALLEGED ADVERSE EMPLOYMENT ACTIONS**

Plaintiff's allegations of adverse employment actions taken do not describe material actions, and do not rise to the level of adverse employment actions;[1] only Plaintiff's suspension and termination from ASI are adverse employment actions.  ASI defenses to each alleged specific adverse employment action are as follows, by date.  Any citations to the record are for convenience, and are not exclusive.

May 1, 2006:  Mr. Sabella complained that he was bypassed on the toploader based on his seniority.  Mr. Buzzetta agreed with Mr. Sabella and immediately removed Mr. Suarez, who had less seniority, from the toploader and replaced him with Mr. Sabella.  It became clear, however, that Mr. Sabella did not know how to operate the toploader.  He was unfamiliar with the controls, which resulted in Mr. Buzzetta removing Mr. Sabella from the toploader.  Sabella T. 247-249.  Mr. Sabella was too slow and the vessel unloading operation came to  a standstill.  Buzzetta Tr. 60:23-61:2.  Mr. Sabato Catucci was present during the incident and recollected seeing all of the trucks waiting for Mr. Sabella because he couldn't handle the machine.  Catucci Tr. 111:1-20.  Based on Mr. Sabella's inability to operate the equipment, and was not based on sexual discrimination, harassment or retaliation in any form. ASI was within its rights under the contract between the ILA and NYSA to remove him from the toploader.  See Letter from Clint Catucci to ILA at LU 158 and Grievance filed by Michael Sabella at ASI 490-91.  At the Pier Level Meeting, held on September 27, 2006, to consider the grievance, the Labor Adjuster found

---

[1] Plaintiffs' alleged adverse employment actions consist of vague, non-specific and unsupported allegations, or they are decisions Mr. Sabella made, or grievances he filed, or ILA actions, not actions ASI took.  Judge Gershon ruled from the bench on April 19, 2012, that Plaintiff must provide "a listing of the adverse actions other than [] the suspension and termination," Judge Gershon continued, "There can't be some generalized statement, oh, I was denied promotion. The jury can't deal with that.  And if there are other adverse actions, again it can't be they made all these claims, and they wanted this and they wanted that.  An adverse action has a very specific meaning in our case law; and not everything that they don't get, which doesn't affect their salary, their working conditions and so on, amounts to an adverse action."  Summary Judgment Motion Transcript T.18:14-21.

that Mr. Buzzetta's and ASI's decision to not allow Sabella to operate the toploader was proper "given Mr. Sabella's own admission that he was having difficulty operating the machine." See LU1700-1701. The removal from the toploader is not a material adverse employment action. Mr. Sabella alleges he complained about Mr. Buzzetta in 2004 to Mr. Catucci, in an attempt to tie the failure to retrain Mr. Sabella to sex harassment. Mr. Catucci denies receiving such a complaint.

May 3, 2006: Mr. Sabella was appropriately listed as absent from work at Maher Terminals, Inc. on 1/14/2006, ASI on 3/18/2006 and ASI on 4/2/2006 (01626), however the fourth absence from Ceres (not ASI) was apparently in error. The suspension (which requires four absences) was withdrawn. This corrected error is not a material adverse employment action, the error did not involve ASI, and his absences from ASI were legitimate.

May 17, 2006: Mr. Sabella complained that on May 4, 2006, he was denied the opportunity to work after 1:00 pm, while other employees with less seniority were allowed to work. This is not a material adverse employment action and has no connection to the alleged sexual contact or EEOC charge.

July 6, 2006: When Mr. Sabella checked in, Mr. Buzzetta assigned him a truck but he could not locate it. In response, Mr. Buzzetta allegedly yelled at the Plaintiff. Mr. Sabella proceeded to look again for the truck and found it shortly after. This is not a material adverse employment action.

July 6, 2006: Mr. Sabella alleges that he was told to leave work after he refused to drive his truck through a U.S. Customs and Border Protection Dept. machine that examines freight containers for dangerous cargo. However, Mr. Sabella testified that his being instructed to drive through the machine was not as a result of his filing a complaint with the EEOC, as a result of

discrimination or as a result of sexual harassment.  Sabella T. 668:18-669:7.  Furthermore, Mr.
Sabella testified that he did not lose pay for this incident, and although he received a warning
letter from ASI, he did not file a grievance regarding the warning.  Sabella Tr. 666:2-668:15.
This was not a material adverse employment action.

In contrast, Plaintiff caused disruption at the pier.  He used a co-worker's phone and
called "311" who connected him to OSHA, which called the NYPD, which came to investigate.
Later that day, a Customs officer explained to Mr. Sabella that the machine was a detector and
did not emit x-ray radiation, and that it was safe to drive through it.  Mr. Sabella appropriately
received a Letter of Warning because he stopped the ship from being unloaded.  He did this in
retaliation for Mr. Buzzetta allegedly yelling at him in the morning when he could not find his
truck.

July 12, 2006:  Plaintiff did not challenge the fact that he needed to be retrained on the
toploader, only that others who also needed to be retrained were allowed to operate it with less
experience or with informal retraining.  Since Mr. Sabella's complaint sounded in discrimination
and harassment on Aug. 21, 2006, Local 1814 directed him to file those grievances with the
NYSA-ILA Respect and Dignity Policy, which he did not do.  Sabella T.640:18-642:2.

July 13, 2006:  When another employee, who was also told that he had to be retrained,
was allowed to return and operate the toploader without being retrained, according to Mr.
Sabella, Mr. Sabella attempted to file a grievance due to the discrimination and retaliation.
According to Mr. Sabella, Frank Agusto, the union delegate, threatened Plaintiff.  ASI is not
responsible or liable for what the representative of Local 1814 does or says with respect to Mr.
Sabella's attempt to file a grievance; this is not a material adverse employment action.

July 27, 2006:  The Equal Employment Opportunity Commission's letter concerning Mr. Sabella warned Local 1814 that refusal to assist Mr. Sabella with grievances could constitute retaliation.  No investigation was conducted by the EEOC.  ASI does not take or receive grievances.  This is not a material adverse employment action by ASI nor is it connected to retaliation for his protected complaint of alleged sexual harassment by Mr. Buzzetta.  LU-000176

August 2006:  Mr. Sabella claims that individuals "from the employer" and the union made threats to Plaintiff's co-workers if they did not sign a petition to get Mr. Sabella removed from his position.  Plaintiff has not produced any such petition, nor identified who "from the employer" was asking people to sign a petition.  As such, there is no connection to ASI.  No unionized employee could be removed based on a petition.  This is not a material adverse employment action taken by ASI.

August 8, 2006:  Mr. Sabella admitted that he was on his cell phone while at work, for a clarification of his coffee order to a co-worker.  Mr.Buzzetta observed Plaintiff on his phone and demanded that he check out, as a result of which Mr. Sabella lost sixteen (16) hours of pay. Mr. Sabella did not deserve special treatment merely because he had filed an EEOC charge of sexual harassment. He was violating a clear pier safety rule against cell phone use while driving or operating heavy machines.

ASI was not required to remove Mr. Buzzetta as tractor foreman because Mr. Sabella filed what ASI perceived to be a baseless sex discrimination claim.  While Mr. Sabella lost pay, this was for cause, and in any case, does not rise to the level of a material adverse employment action.

August 9, 2006:  Mr. Sabella apparently grieved that he was hired as a hustler driver at Pier 78 for a barge operation that ended as a half day, while other employees with less seniority from the drivers list were guaranteed an eight (8) hour day.  Hiring is controlled by  NYSA through the telephonic hiring system, not ASI; this is not a material adverse employment action.

September 7, 2006:  Mr. Sabella apparently grieved that on August 7 and 10, 2006 he was bypassed on the toploader and on a barge on August 17 and 25, 2006, respectively, and lost wages.  Although Mr. Buzzetta assigned these duties on these dates, this is not material adverse employment actions.  The grievance was denied, however, Mr. Sabella was given the opportunity to be retrained on the toploader.

September 21, 2006:  Plaintiff alleged he was issued a warning letter without merit, however, Local 1814 observed that he failed to "roll" with the gang from deck of Saudi vessel in the belly of the ship.  So he was checked out.  This is not a material adverse employment action.

September 18, 2006:  Mr. Sabella apparently grieved that on the week ending September 17, 2006, he lost four (4) regular hours of work because he was bypassed on the toploader.  This is not a material adverse employment action, and Mr. Sabella does not  connect this alleged error to sexual harassment, discrimination because of sex, or retaliation for filing the EEOC charge.

October 13, 2006:  Mr. Sabella submitted a handwritten note dated October 4, 2006, pertaining to his attempting to run over and kill Nicola Vitale, a fellow employee.  Mr. Sabella attempted to become the victim by filing a report with the Waterfront Police because he allegedly feared for his safety and his job.

November 15, 2006:  Mr. Sabella received a suspension letter from ASI based on his misconduct as confirmed by the Felieu investigation; i.e., threats against his fellow workers.  He received this suspension for cause.

January 8, 2007:  Mr. Sabella gained new employment at New York Container Terminal (NYCT), however, he again walked off the job before the work was completed, after being warned not to by the NYCT foreman.  He was then terminated from the NYCT employee list on Jan. 8, 2007.  Mr. Sabella's termination from NYCT was not in retaliation for his baseless complaints against ASI.  Judge Gershon has already ruled that Mr. Sabella cannot opine at trial that Mr. Catucci or Mr. Pernice caused his termination from NYCT.  Mr. Catucci has no "connection" to NYCT, which was a fierce competitor of ASI, and whose CEO did not get along with Mr. Catucci.  Mr. Sabella has provided no evidence that ASI, Mr. Catucci or Mr. Pernice influenced NYCT to terminate Mr. Sabella when he violated the work  rules there.

March 7, 2007:  Mr. Sabella grieved his suspension to James P. Melia, a Labor Adjuster, stating that on November 15, 2006, Mr. Sabella was removed from the pier list pending an investigation into his threats against his fellow workers.

May 2007: ASI acted appropriately and had just cause to terminate Mr. Sabella after the Pier Level Hearing on May 8, 2007.  ASI's  actions were the direct result of Mr. Sabella's self-declared "war" on ASI, and his threats of violence and harassment of his co-workers, which he undertook in the spring and summer of 2006, not because of retaliation for Mr. Sabella's EEOC charge.  These adverse employment actions were justified for cause.  Local 1814 agreed that Mr. Sabella should be suspended and terminated from employment with ASI.

**DEFENDANT LOCAL 1814'S DEFENSES**

Sabella sued Local 1814 for an alleged violation of the duty of fair representation ("DFR") together with claims of alleged retaliation under the New York Human Rights Law and the New York City Administrative Code.  On April 26, 2012, the Court held that Sabella's state-law claims against the union were preempted.  The Court also held that any DFR claims that

accrued prior to September 27, 2006 were barred by the relevant statute of limitations. Accordingly, the only surviving claim against 1814 is a DFR claim that arises out of Sabella's suspension from ASI in November 2006 and termination in May 2007.  Accordingly, Sabella's allegations of contractual violations that pre-date the limitations cut-off date cannot form the basis of any viable DFR claim against Local 1814.  Likewise, any subsequent grievances involving other employers that were not addressed in Sabellas's complaint or discovery cannot be raised in the trial of Sabella's claim relating to ASI.  ASI's discipline of Mr. Sabella was based upon a thorough investigation and detailed report by a neutral third party appointed by the collective bargaining agreement.  This initial investigation was bolstered by a subsequent investigation conducted by an agent of ASI.  Accordingly, Local 1814 cannot have violated its duty of fair representation as a matter of law, because it was contractually obligated to accept the findings of the investigator appointed by the collective bargaining agreement, and there is no basis for finding that Local 1814's behavior was arbitrary or in bad faith.

## V

## BRIEF STATEMENT OF CATEGORIES AND AMOUNTS OF DAMAGES CLAIMED OR OTHER RELIEF SOUGHT

### PLAINTIFF'S DAMAGES

Mr. Sabella has incurred and continues to incur economic damages as a result of discrimination and retaliation on the part of ASI. In addition, Mr. Sabella has incurred and continues to incur economic damages as the result of Local 1814's breach of its Duty of Fair Representation.

**Back Pay Damages**

**Salary**

**2006** – From his suspension on November 15, 2006, until December 31, 2006, Mr. Sabella lost **$8,400.00** (7 weeks).

**2007** – Before his injury, based upon his seniority and amount of work available, Mr. Sabella should have been earning $120,000.00 for the year ($10,000.00/month)
January 2007 – March 11, 2007 – he earning $14,460.00 when he should have made approximately - $25,000.00
**Loss of $10,540.00**

From March 11, 2007 – June 18, 2008, Mr. Sabella received workers compensation
Compensation - $36,614.09
Unemployment - $3,240.00
Working for friend Joe Disalvo, Inc. - $6,900.46

**2008** – From June 18, 2008, to December 31, 2008, Mr. Sabella earned $12,319.00
Based upon his seniority and amount of work available, he should have earned –
$60,000.00 (6 months)
**Loss of $47,681.00**

**2009** – Mr. Sabella because disabled again and was out of work for four (4) months

| | |
|---|---|
| Compensation - | $5,355.00 |
| Unemployment - | $6,602.50 |
| Earned salary - | $13,930.00 |
| **Total -** | **$25,887.50** |

Based upon his seniority and amount of work available, he should have earned $140,000.00 for the full year.
Accordingly, he should have earned $90,000.00 for time actually worked in 2009
**Loss of $76,070.00**

**In addition, he did not receive his $7,500.00 container check**

**2010** – Earned - $62,378.00
Unemployment - $2,416.00
Total - $64,794.00
Based upon his seniority and amount of work available, he should have earned $150,000.00 for the full year.
**Loss of $85,206.00**

**2011** – Earned $97,155.00
Based upon his seniority and amount of work available, he should have earned $170,000.00 for the full year.
**Loss of $72,845.00**

**2012** – To date has earned $20,000.00

Projected earnings for the year - $60,000.00
Based upon his seniority and amount of work available, he should have earned $180,000.00 for the full year.

## Vacation

**2007** – No loss of vacation
Loss of holiday pay - **$800.00**

**2008** – No loss of vacation
Loss of holiday pay - **$800.00**

**2009** – Entitled to six (6) weeks, only received three (3) weeks
Lost three weeks - **$3,000.00**

**2010** – No loss of vacation

**2011** – Entitled to six (6) weeks, only received three (3) weeks
Lost three weeks - **$3,000.00**

## Annuity

Longshoremen receive $2.00 for every hour worked. Typically, longshoremen should work at least 2,000 hours/year.
Mr. Sabella lost the following annuity deposits:

**2008 –** Received workers compensation for 6 months
Worked 400 hours
Based upon his seniority and volume of work available, he should have worked 1,000 hours = $2,000.00
**Loss of 600 hours - $1,200.00**

**2009 –** Worked 1,000 hours - $2,000.00
Based upon his seniority and volume of work available, he should have worked 2,000 hours = $4,000.00
**Loss of 1,000 hours - $2,000.00**

**2010 –** Worked 1,000 hours - $2,000.00
Based upon his seniority and volume of work available, he should have worked 2,000 hours = $4,000.00
**Loss of 1,000 hours - $2,000.00**

**2011 –** Worked 900 hours
Based upon his seniority and volume of work available, he should have worked 2,000 hours = $4,000.00
**Loss of 1,100 hours - $2,200.00**

**Health Insurance**

From 2007 to present, Mr. Sabella has paid fifty (50%) percent out of his pocket for health insurance costs.

**Front Pay Damages**

Due to the fact that Mr. Sabella is not permitted to work as a longshoreman on the Brooklyn and Staten Island piers where he has seniority and would therefore, be in a position to work full time at a higher rate of pay, he is compelled to accept jobs where he has no seniority and where he is placed on the bottom of the list and/or is the last to be called for work. Accordingly, Mr. Sabella will sustain economic damages going forward should he continue to be banned from employment on the Brooklyn and Staten Island piers.

**Punitive Damages**

Mr. Sabella seeks punitive damages versus both defendants in an amount to be determined at trial.

**Attorneys' Fees and Costs**

Mr. Sabella seeks attorneys' fees and costs versus both defendants in an amount to be determined at trial.

**DEFENDANT ASI'S DEFENSES TO CALCULATION OF DAMAGES**

**No Damages**

Michael Sabella makes more money now than he did while working for ASI, excluding the years in which he was disabled, and thus, Mr. Sabella has not only suffered no damages, but rather, he has improved his lot.  Specifically, Mr. Sabella earned almost $30,000 more on average from 2010-2012 when he was not working at ASI than his ASI wages during the pre-suspension period of 2002-2006.  Mr. Sabella earned $15,009 more from 2010 to 2012 than his

average wages for <u>all employers</u> during the pre-suspension period of 2002-2006, when disability periods in 2007-2009 are excluded.[2]

According to NYSA business records for the years[3] before and after his termination from ASI, Mr. Sabella earned:

| Year Ending 9/30 | Other Terminals | ASI | Total |
|---|---|---|---|
| 2002 | $  1,215.00 | 0 | $  1,215.00 |
| 2003 | $11,505.28 | $30,104.67 | $41,609.95 |
| 2004 | $14,173.57 | $28,223.90 | $42,397.47 |
| 2005 | $35,851.73 | $12,276.76 | $48,128.49 |
| 2006 | $29,780.73 | $20,254.17 | $50,034.90 |
| 2007 (disabled) | $  8,876.13 | $  6,525.26 | $15,401.39 |
| 2008 (disabled) | 0 | 0 | 0 |
| 2009 (disabled) | $  6,299.50 | 0 | $  6,299.50 |
| 2010 | $32,660 | 0 | $32,660.00 |
| 2011 | $69,024.39 | 0 | $69,024.39 |
| 2012 | $79,973.07 | 0 | $79,973.07 |

According to NYSA business records for the years before and after Mr. Sabella's termination from ASI, Mr. Sabella never worked 2,000 hours (including straight and overtime) while at ASI.  He worked 2,000 hours total (including <u>all</u> marine terminals in the port) only once (in 2006) prior to his ASI termination.  Since his termination from ASI, Mr. Sabella has worked over 2,000 hours in both 2011 and 2012.  (Mr. Sabella's disability for parts of 2007, 2008 and 2009, resulted in fewer hours worked.)

| Date: Year Ending 9/30 | ASI - Straight Time | ASI - Overtime | Total ASI Hours Worked | Total Port-wide Hours Worked |
|---|---|---|---|---|
| 2002 |  |  | - | 61 |
| 2003 | 569 | 769 | 1,338 | 1,864 |

---

[2] Mr. Sabella's average earnings for the years ending 9/30/07 through 9/30/09 were disrupted by periods of disability. Mr. Sabella's earnings in 2007-2009 averaged $9,902, he only worked 453 hours total (none in 2008) in the port industry for these years.  ASI seeks to exclude these three years as outliers.

[3] NYSA employees do not operate on a calendar year; the port "year" is 10/1 – 9/30.

| 2004 | 482.5 | 736.5 | 1,219 | 1,865.5 |
| 2005 | 249 | 252 | 501 | 1,970.5 |
| 2006 | 821 | 304 | 1,125 | 2,116 |
| 2007 | 135.5 | 105 | 240.5 | 568 |
| 2008 | - | - | - | - |
| 2009 | - | - | - | 204 |
| 2010 | - | - | - | 1,034 |
| 2011 | - | - | - | 2,114.5 |
| 2012 | - | - | - | 2,080.5 |

If ASI is found liable in any respect, the appropriate measure of back pay damages is Mr. Sabella's historical earnings at ASI, a product of his hourly wage times the hours worked, not all hours and wages he worked. Mr. Sabella claims he "lost seniority" after he was suspended and/or terminated from ASI (or NYCT). However, ASI is not the insurer of how many hours he worked or what he earned at other terminals. The only way to compare his pre- and post-termination wages is by comparing wages earned, and hours worked. Each year is analyzed serially.

Prior to 2006, Mr. Sabella's highest earnings from ASI was $30,105 in 2003. From October 1, 2002 to September 30, 2006, Mr. Sabella worked an average of 530 hours of "straight" time and an average of 515 hours of overtime for ASI. Including work for all employers, Mr. Sabella worked an average of 927 hours of "straight" time and an average of 1,027 hours of overtime during the same time period. Mr. Sabella's average earnings from 2002-2006 at all employers were $45,543, the high was $50,035 (2006) and the low was $41,610 (2002). Mr. Sabella's earnings average at ASI for this period was just $22,715, and the ASI high was $30,105 (2003), and the low was $12,277 (2005).

In 2006, Mr. Sabella earned $20,254.17 from ASI from 10/1/05 to 9/30/06, and $50,034.90 in total.  He was not suspended or terminated during the year ending September 30, 2006, and suffered no damages in 2006.  As such, there is no factual basis for pegging Mr. Sabella's salary at $120,000 at ASI or in total starting in 2007.

For the next year, ending September 30, 2007, Mr. Sabella earned $6,525.26 from ASI from 10/1/06 until 11/15/06 (46 days) when he was suspended, another $8,876 from NYCT until he was terminated from NYCT on 1/8/07, and at other employers.  If his 2007 rate of pay and hours worked at ASI from 10/1/06 through 11/15/06 and at NYCT through 1/8/07, he presumably could have earned about $45,675 had he continued to work as many days and hours as he had at ASI.  There is no factual basis for Mr. Sabella's allegation that he "should have" been earning $120,000 for the year ($10,000/month), Joint Pretrial Order at p. 19, or the alleged "loss" of $10,540.

For 2008 (10/1/07 to 9/30/08), Mr. Sabella earned nothing at the port, he was disabled. There is no factual basis for his allegation that he "should have" earned $60,000 for 6 months, that he "lost" $47,681, or that he "earned" $12,319.  $12,319 was his tax return income, however it is made up of other income.

For 2009 (10/1/08 to 9/30/09), Mr. Sabella earned $6,300; he was apparently still disabled.  There is no factual basis for his allegation that he "should have" earned $140,000 for the year, and that he "lost" $76,070.

For 2010 (10/1/09 to 9/30/10), Mr. Sabella earned $32,660 at the port.  There is no factual basis for his allegation that he "should have: earned $150,000, that he actually earned $62,794 at the port, or that he "lost" $85,206.

For 2011 (10/1/06 until 9/30/11), Mr. Sabella earned $69,024 at the port.  This is more than twice as much as his highest earnings at ASI ($30,105 in 2003), and $20,000 more than his previous highest earnings at all terminals, overall ($50,036 in 2006).  There is no factual basis for Mr. Sabella's allegation that he "should have" earned $170,000 in 2011, that he actually earned $97,155 at the port, or that he "lost" $72,845.  His port earnings were based on his hours actually worked.

ASI closed on or about 9/26/2011, and therefore no ASI-listed longshoreman earned any wages in the year ending 9/20/12 from ASI.  As such, ASI cannot be held liable for backpay "losses" in 2012 or thereafter, after ASI shut down.  Mr. Sabella would have lost his job at ASI in 2011, anyway.

**Failure to Mitigate Damages**

Where a plaintiff fails to make efforts to seek and maintain comparable employment, the employer "is released from the duty to establish the availability of comparable employment[.]" Greenway, 143 F.3d at 54.  Plaintiff failed to work as much as he could have, from November 2006 when he was suspended from ASI, and especially from January 2007 when he was terminated from New York Container Terminal, until ASI closed on October 1, 2011 (excluding periods of disability).

**Absenteeism, Left Work Debits and Tardiness**

Mr. Sabella's work history was poor.  On May 3, 2006, for example, Mr. Sabella received a one-week suspension from all industry employment due to previous, excessive absenteeism.  Mr. Sabella had been absent from work at Maher Terminals, ASI (twice) and Ceres Atlantic Terminals.  Prior to this incident, Mr. Sabella had been suspended at least eight (8) times from all industry employment due to excessive absenteeism. He had also been banned

from the sugar house pier in Yonkers.  The jury is entitled to take into account Plaintiffs' poor

work habits when assessing lost earnings as part of back pay, based on Plaintiff's failure to

mitigate his damages.

## Vacation Pay and Annuity

There is no factual basis for Mr. Sabella's claims that he lost $7,600 of vacation

pay, including for years he was disabled, and annuity payments between 2008 and 2011 at

between 600 and 1000 hours, worth $7,400.  Based on his alleged annuity losses, Mr. Sabella

seems to believe he "should work" 2,000 hours/year.  However, Mr. Sabella never worked 2,000

hours/year at ASI; before or after he was terminated by ASI.

## Health Insurance

ASI is not responsible for Mr. Sabella's out of pocket costs for health insurance, during

or after his employment at ASI, only its employer share of the premium.


## Front Pay Damages

Mr. Sabella's "front pay" damages, if any--which ASI contests--ended either when he

was suspended from ASI for cause, or when he was dismissed from New York Container

Terminal (NYCT), his subsequent employer, on Jan. 8, 2007 for cause. (Mr. Sabella was warned

not to leave his post at NYCT, and did anyway. ) He failed to mitigate his damages by failing to

remain gainfully employed at NYCT with the same access to jobs and seniority.  His seniority

code has not changed, but because he is no longer on ASI's employee list (ASI is closed, in any

event) and he was dismissed from NYCT's employee list, which is in the same section of Local

1814, Mr. Sabella caused his own problem, in terms of being called in for work at terminals

other than Brooklyn and Staten Island where he was more senior.  Notwithstanding, Mr. Sabella

is earning more now than he ever did at ASI, or overall (including other employers), and thus has no front pay damages.

**Emotional Distress**

Mr. Sabella has disclaimed any mental or emotional damages.

**Statutory Cap on Non-Compensatory Damages**

As a small employer with fewer than 100 employees any award (other than compensatory damages) against ASI must be capped at the statutory maximum of $50,000.

**Punitive Damages**

There is no basis in law or fact for awarding Plaintiff punitive damages.  Punitive damages are awarded only in cases of intentional discrimination because of sex.  Mr. Sabella admitted that Mr. Buzzetta did <u>not</u> intend to have sex with him, nor was Mr. Buzzetta gratified by the alleged single encounter because Mr. Buzzetta was not homosexual.


**Attorneys' Fees and Costs**

If Plaintiff is the prevailing party, and wins an award, his fees and costs should be limited to that of the firm who substituted for Hope Gabor, Esq., since both she and David Gabor, Esq. renounced any interest in their attorneys' fees and costs.  To award Mr. Sabella their fees and costs would be an unjust windfall.  Defendants demand a hearing on the appropriateness of any such fees/cost award under federal and state prevailing party case law.

## VI

### THIS IS A JURY TRIAL AND NUMBER OF TRIAL DAYS NEEDED

This case will be tried with a jury.

Plaintiff Michael Sabella estimates that one (1) week will be necessary to present their case in chief.

Defendant ASI estimate that one (1) week will be necessary to defend Plaintiff's case in chief.

Defendant Local 1814 estimates that one day will be necessary for its defense against the Sabella's DFR claim.

## VII

## THE PARTIES HAVE NOT CONSENTED

The parties have not consented to trial before the Magistrate Judge.

## VIII

## STIPULATIONS TO FACTS OR LAW

## IX

## WITNESSES

## PLAINTIFF'S WITNESSES ONLY

1. Michael Sabella – c/o Matthew J. Blit, Attorney at Law, 350 Fifth Avenue, 36th Floor, New York, New York, 10118 – in person.

2. David Morales – in person.  Morales is familiar with the events transpiring in the workplace.

3. Wilfredo Pagan – in person.  Pagan is familiar with the events transpiring in the workplace.

4. Michael Suarez – address unknown at this time – in person. Mr. Suarez is familiar with events transpiring in the workplace.

5. Eric Seal, CFO, Red Hook Container Terminal LLC.  138 Marsh St., Port Newark, NJ 07114.

**PLAINTIFF'S AND ASI'S WITNESSES ONLY**

6. Angelo Pastore – c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Pastore is familiar with the events transpiring in the workplace.

(ASI) Mr. Pastore will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

7. Sabato Catucci – c/o American Stevedoring Inc. – in person.

(PL) Mr. Catucci is familiar with the events transpiring in the workplace.

(ASI) Mr. Catucci will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella, Mr. Morales and Mr. Pagan, including denial of sexual assault, discrimination, harassment lack of retaliation, machines, assignments, his job scope, the fact that he did not supervise Mr. Sabella, playing and joking, nicknames, Mr. Sabella's refusal to roll to the next task, left work early debits, his tardiness and absenteeism, training, grievances, and the fact that Mr. Sabella never complained about sex discrimination, harassment, hostile work environment or retaliation, in his role as CEO, including but not limited to the fact that ASI management had no involvement in sex discrimination, harassment, hostile work environment or retaliation.

8. Frank Jordan - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Jordan is familiar with Plaintiff's grievances and how they were handled by the Union, his training, his operation of machines, and his conduct at the ASI workplace which  led to him being suspended and terminated.

(ASI) Mr. Jordan is familiar with Mr. Sabella's training, operation, work history, his performance, grievances and how grievances were handled.

9. Anthony Petrizzo – c/o New York Shipping Association, 333 Thornall Street, Suite 3A, Edison, New Jersey, 08837 – in person.

(PL) Mr. Petrizzo will testify as to the volume of work and salary of employees.

(ASI) Mr. Petrizzo will testify as to the authenticity of exhibits originating from NYSA, unless stipulated to, and the content of all payroll records, absenteeism and penalties, other reports, hours and wages, suspensions and termination, and all other documents provided in response to subpoenas.

10. Custodian of Records, New York Shipping Authority.

(PL) The Custodian of Records will testify as to the authenticity of exhibits originating from NYSA.

(ASI) The Custodian will testify as to the authenticity, meaning and significance of exhibits originating from Local 1814, and as well as substance of all documents.


**PLAINTIFF'S AND ILA'S WITNESSES ONLY**

11. Dominick Fevola – c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Fevola is familiar with the events transpiring in the workplace.

(ILA) Mr. Fevola will testify about what he told Feliu and McCausland.

PLAINTIFF'S, ASI'S & ILA'S WITNESSES (JOINT)

12. Conoka Brown – 752 East 85th Street, Brooklyn, New York 11236 – in person.

(PL) Ms. Brown is familiar with the events transpiring in the workplace.

(ASI) Ms. Brown will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

(ILA) Ms. Brown will testify about what she told Feliu and McCausland.

13. Wayne Johnson – c/o Local 1814, ILA, AFL – CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Johnson is familiar with the events transpiring in the workplace.

(ASI) Mr. Johnson will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

(ILA) Mr. Johnson will testify about what he told Feliu and McCauland.

14. Juan Pabon – c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Pabon is familiar with the events transpiring in the workplace.

(ASI) Mr. Pabon will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

(ILA) Mr. Pabon will testify about what he told Feliu and McCausland.

15. Salvatore Buzzetta – c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Buzzetta is familiar with the events transpiring in the workplace.

(ASI) Mr. Buzzetta will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella, Mr. Morales and Mr. Pagan, including denial of sexual assault, discrimination, harassment lack of retaliation, machines, assignments, his job scope, the fact that he did not supervise Mr. Sabella, playing and joking, nicknames, Mr. Sabella's refusal to roll to the next task, left work early debits, his tardiness and absenteeism, training, grievances, and the fact that

33

Mr. Sabella never complained about sex discrimination, harassment, hostile work environment or retaliation.

(ILA) Mr. Buzzetta will testify about what he told Feliu and McCausland.

16. Lou Pernice - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Pernice is familiar with Plaintiff's grievances and how they were handled by the Union.

(ASI) Mr. Pernice is familiar with Mr. Sabella's grievances and how they were handled by the Union, as well as the suspension, termination, training, etc.

(ILA) Mr. Pernice will testify about Local 1814's efforts to investigate Sabella, Morales and Pagan' grievances against ASI.

17. Frank Agosta - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Agosta is familiar with Plaintiff's grievances and how they were handled by the Union.

(ASI) Mr. Agosta is familiar with Mr. Sabella's grievances and how they were handled by the Union, as well as the matters alleged in the grievances.

(ILA) Mr. Agosta will testify about his independent knowledge about complaints brought against Sabella, Morales and Pagan, as well as Local 1814's efforts to investigate Sabella, Morales and Pagan' grievances against ASI.

18. Dominick Alaimo - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Alaimo is familiar with Plaintiff's grievances and how they were handled by the Union.

(ASI) Mr. Alaimo is familiar with Mr. Sabella's grievances and how they were handled by the Union, and the events at ASI with respect to Mr. Sabella.

(ILA) Mr. Alaimo will testify about his independent knowledge about complaints brought against Sabella, Morales and Pagan, as well as Local 1814's efforts to investigate Sabella, Morales and Pagan' grievances against ASI.

19. Giovanni Lucido - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Lucido is familiar with the events transpiring in the workplace.

(ASI) Mr. Lucido will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.


(ILA) Mr. Lucido will testify about what he told Feliu and McCausland.

20. Nick Vitale - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232 – in person.

(PL) Mr. Vitale is familiar with the events transpiring in the workplace.

(ASI) Mr. Vitale will testify as to the events occurring at the ASI workplace and in particular his complaint and the Feliu investigation with respect to Mr. Sabella.

(ILA) Mr. Vitale will testify about what he told Feliu and McCausland.

21. Alfred Feliu, Esq. – in person. Mr. Feliu c/o Vandengerg & Feliu, LLP, One Grand Central Place, 60 East 42nd Street, New York, New York 10165.

(PL) Mr. Feliu is familiar with the investigation which led to Plaintiff's termination.

(ASI) Mr. Feliu is familiar with the investigation which led to Mr. Sabella's termination, including the interview and statements of all witnesses.

(ILA) Mr. Feliu will testify about his investigation of the retaliation complaints brought against Sabella, Morales and Pagan.

22. James Melia - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

11232 – in person.

(PL) Mr. Melia is familiar with Plaintiff's grievances and how they were handled by the Union.

(ASI) Mr. Melia is familiar with Mr. Sabella's work history and how NYSA operates at the port

with respect to ASI and Mr. Sabella' claims.

(ILA) Mr. Melia will testify about the pier level hearings regarding the Sabella, Morales and

Pagan' grievances against ASI.

23. Nino Martino – c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

11232 – in person.

(PL) Mr. Martino is familiar with the events transpiring in the workplace.

(ASI) Mr. Martino will testify as to the events occurring at the ASI workplace with respect to

Mr. Sabella.

(ILA) Mr. Martino will testify about what he told Feliu and McCausland.

**ASI'S AND ILA'S WITNESSES ONLY**

24. John Cunningham - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

11232.

(ASI) Mr. Cunningham will testify as to the events occurring at the ASI workplace with respect

to Mr. Sabella.

(ILA) Mr. Cunningham will testify about what he told Feliu and McCausland.

25. Chris Amato - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

11232.

(ASI) Mr. Amato will testify as to the events occurring at the ASI workplace with respect to Mr.

Sabella.

(ILA) Mr. Amato will testify about what he told Feliu and McCausland.

    26. Rosalino Amato - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

        11232.

(ASI) Mr. Amato will testify as to the events occurring at the ASI workplace with respect to Mr.

Sabella.

(ILA) Mr. Amato will testify about what he told Feliu and McCausland.

    27. Tim Benigno - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

        11232.

(ASI) Mr. Benigno will testify as to the events occurring at the ASI workplace with respect to

Mr. Sabella.

(ILA) Mr. Benigo will testify about what he told Feliu and McCausland.

    28. Ernest Lubrano - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

        11232.

(ASI) Mr. Lubrano will testify as to the events occurring at the ASI workplace with respect to

Mr. Sabella.

(ILA) Mr. Lubrano will testify about what he told Feliu and McCausland.

    29. Phillip Mezzatesta - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York

        11232.

(ASI) Mr. Mezzatesta will testify as to the events occurring at the ASI workplace with respect to

Mr. Sabella.

(ILA) Mr. Mezzatesta will testify about what he told Feliu and McCausland.

30. Joe Moccia - c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232. (ASI) Mr. Moccia will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

(ILA) Mr. Moccia will testify about what he told Feliu and McCausland.

## ASI'S WITNESSES ONLY

31. Margaret A. McCausland, Esquire, McCausland & McCausland, 401 E. Elm St., Suite 200, Conshohocken, PA. Ms. McCausland is familiar with her confirmation of the Feliu investigation statements, which led to Mr. Sabella's termination.

32. Noel Rosengart, Esquire – Waterfront Commission of NY, 39 Broadway, New York, NY 10006. Mr. Rosengart is familiar with the statements of all witnesses who gave interviews including Mr. Sabella.

33. Louis Cavana – c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, New York 11232. Mr. Cavana will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

34. James Devine and the Foreman there – New York Container Terminal, Suite 300, 300 Western Avenue, Staten Island, NY 10303. Mr. Devine will testify as to the events occurring at NYCT workplace and why Mr. Sabella was terminated.

35. Clint Catucci – c/o Janine G. Bauer, Esq., Szaferman, Lakind, P.C., 101 Grovers Mill Road, Suite 200, Lawrenceville, NJ 08648 . Mr. Catucci will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

36. Keith Catucci – c/o Janine G. Bauer, Esq., Szaferman, Lakind, P.C., 101 Grovers Mill Road, Suite 200, Lawrenceville, NJ 08648. Mr. Catucci will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

37. Matthew Yates – c/o Janine G. Bauer, Esq., Szaferman, Lakind, P.C., 101 Grovers Mill Road, Suite 200, Lawrenceville, NJ 08648. Mr. Yates will testify as to the events occurring at the ASI workplace with respect to Mr. Sabella.

## ILA'S WITNESSES ONLY

38. Lewis Carona, c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, NY 11212. Mr. Carona will testify about what he told Feliu and McCausland.

39. Sal Lubrano, c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, NY 11212. Mr. Lubrano will testify about what he told Feliu and McCausland.

40. Larry Warren, c/o Local 1814, ILA, AFL-CIO, 70 20th Street, Brooklyn, NY 11212. Mr. Warren will testify about what he told Feliu and McCausland.

41. Sam DuPree, address to be supplied. Mr. DuPree will testify about the pier level hearings regarding the Sabella, Morales and Pagan' grievances against ASI.

42. Shelly Greenwald, address to be supplied. Ms. Greenwald will testify about the EEO policy set up under the NYSA-ILA collective bargaining agreement.


# X

## DEPOSITION TESTIMONY

The plaintiff does not intend to offer deposition testimony in its case in chief. However, the plaintiff reserves the right to use deposition testimony when cross-examining defendants' witnesses and in rebuttal. The plaintiff reserves the right to rely on defendants' deposition testimony to the full extent permitted by Def. R. Civ. P. 32(a)(2). The plaintiff reserves the right to offer into their case in chief the deposition testimony of any witness who is unavailable for trial, as provided by Fed. R. Civ. P. 32(4).

Defendant ASI reserves the right to use deposition testimony when cross-examining plaintiff's witnesses and in rebuttal. The defendant reserves the right to rely on plaintiff's deposition testimony to the full extent permitted by Def. R. Civ. P. 32(a)(2). The defendant reserves the right to offer into their case in chief the deposition testimony of any witness who is unavailable for trial, as provided by Fed. R. Civ. P. 32(4), including but not limited to the following:

Sabella Interview by Waterfront Commission, dated March 18, 2005.

Buzzetta Interview by Waterfront Commission, dated August 17, 2005.

## XI(1)

### STATEMENT OF STIPULATED FACTS

1.      Plaintiff Michael Sabella is a former employee of American Stevedoring, Inc., and current member of ILA Local 1814.

2.      At all times relevant to this lawsuit, Defendant American Stevedoring, Inc. ("ASI"), was a stevedoring company that operated a marine terminal in Brooklyn, New York, and provided stevedoring services to ships that called at ASI's pier.

3.      ASI is a member of the New York Shipping Association, Inc. ("NYSA"), which acts as a multiemployer collective bargaining representative, and whose membership is made up of terminal operators, shipping carriers, stevedoring companies and other maritime employers in the Port of New York and New Jersey ("Port").

4.      Defendant Local 1814, International Longshoremen's Association, AFL-CIO (""ILA" or "Local 1814"), is an unincorporated association and a labor organization located in Brooklyn, New York, that represents various units of employees in waterfront-related positions in Brooklyn

and Staten Island. The "deep sea" division of Local 1814 represents the longshore workers who were employed by ASI in Brooklyn. Local 1814 is affiliated with the International Longshoremen's Association, AFL-CIO ("ILA"), and is bound by the terms of the agreement that the ILA negotiates with NYSA.

5.    The terms and conditions of Plaintiff's employment as a longshoreman, at ASI and elsewhere in the Port, are governed by a collective bargaining agreement ("CBA") between the NYSA and the ILA, which is the collective-bargaining representative for all longshore workers in the Port.

6.    ASI's CEO is Sabato Catucci; its terminal manager was Frank Jordan.  Salvatore Buzzetta was the tractor foreman (also known as the "machine boss").  He assigned machines when the longshoremen clock in, in the morning or at the beginning of a shift. The assistant "machine boss" was Louis Cavana.

7.    Persons desiring to work as longshore laborers must be sponsored by one of the terminal operators, such as ASI.  If you work for a particular terminal, you may be on that employer's "gang list."  Otherwise, you are termed "casual" labor.  Even if you are on a particular employer's "gang list," you can work at other terminals if the opportunity arises.

8.    In 2000 ASI sponsored David Morales and Wilfredo Pagan at the Waterfront Commission of New York and New Jersey so that they could obtain their waterfront passes. Subsequently, ASI hired Morales and Pagan as longshoremen.  Plaintiff Michael Sabella was hired as a longshoreman by ASI in September 2002.  At the time of their hiring as longshoremen, Pagan, Morales and Sabella also became members of Defendant Local 1814.

9.    Because ASI had sponsored Morales and Pagan to obtain their waterfront passes, they were regular or "list" employees and ASI had first rights to their services.  Likewise, Morales,

41

Pagan and Sabella were entitled to priority over "casual" or "non-list" longshoremen whenever ASI needed workers. Although Sabella was not sponsored by ASI when he initially joined the longshore industry, he joined ASI's list and became a regular employee in 2002.

10.     A list employee who is not needed for the next day's work by his regular employer's facility can be hired as a "casual" employee by another waterfront facility in the Port. Thus, a longshoreman can work for several different employers concurrently.

11.     Sabella, Morales and Pagan's job duties as longshore workers in the Port include loading and off-loading cargo from ships and operating various types of cargo-handling equipment including yard hustlers, hi-los, forklifts, top-loaders, and reach-stackers. These machines lift, carry, and place containers through hydraulically operated functions located in a truck-like cab.

12.     The CBA between NYSA and the ILA contains grievance provisions that allows employees to complain about perceived contractual violations and which consist of five steps, culminating in arbitration.

13.     Article XXV of the CBA describes the steps of the grievance process. The first step is between the supervisor and the shop steward. If no settlement is reached at the first step, the contract prescribes that the second step is to bring the grievance before two "labor adjusters," one of whom is appointed by the NYSA and the other by the ILA. This is called a "pier level hearing." In practice, grievances are sometimes resolved informally by Local 1814 and management before the pier level hearing is actually held.

14.     After a pier level hearing, the labor adjusters issue their determination in a written report. This report is sent to the grievant along with a document describing the grievant's appeal rights. This document makes clear that the grievant can appeal to the NYSA-ILA Contract Board with or without a union representative.

15.     At all relevant times, the two labor adjusters who were responsible for adjudicating grievances at the pier level pursuant to the CBA were James Melia, on behalf of NYSA, and Sam DuPree, on behalf of the ILA.

16.     In October 2004, the NYSA-ILA CBA was amended to include a comprehensive port-wide anti-harassment and anti-discrimination policy ("Policy") promulgated by the NYSA and ILA.

17.     This Policy created a new complaint mechanism for harassment and discrimination complaints independent of the traditional contractual grievance procedure.

18.     As noted above, the NYSA-ILA Policy also created the NYSA-ILA EEO Officer, a neutral third-party legal professional who is also an experienced investigator.

19.     The individual who has held this position since October 2004 is Alfred Feliu, Esq.

20.     It is Feliu's responsibility to ensure that each concern or complaint raised by an employee covered by the NYSA-ILA EEO Policy receives a prompt response and a thorough investigation.

21.     Feliu issued his confidential report in October 2006.


## XI(2)

## EXHIBITS

**The plaintiff intends to offer the following exhibits:**

1)  EEOC letter to Local 1814 pertaining to Morales and Mr. Sabella. Bates Stamped: LU-000176-000177.

2)  Decision from the October 17, 2006, pier level hearing that took place on September 27, 2006. Bates Stamped: LU-000046-000048; LU-000056-000057; LU-000059-000060 and LU-000062-000063.

3) Morales' grievance on behalf of Morales, Pagan and Mr. Sabella dated February 6, 2007, regarding the January 5, 2007 incident. Bates Stamped: LU-000183.

4) May 29, 2007, Pier Level Decision. Bates Stamped: ASI 01236; ASI 01269-01276.

5) Mr. Sabella's May 1, 2006, grievance and complaint sent to Lou Pernice and the Equal Employment Opportunity Commission. Bates Stamped: 01713-01714 and 01717.

6) Mr. Sabella's charge of discrimination with the EEOC dated May 2, 2006. Bates Stamped: ASI-00493.

7) Letters to Mr. Sabella pertaining to alleged absenteeism dated May 3, 2006, with a document rectifying it. Bates Stamped: 01626-01627 and 01671.

8) Letter to Mr. Sabella pertaining to absenteeism dated November 15, 2006. Bates Stamped: 01859-01860.

9) Undated letter with handwritten note of May 17, 2006, from American Stevedoring, Inc., pertaining to the May 2, 2006, alleged incident with Mr. Sabella as well as, slightly different versions of this letter sent to several other people. Bates Stamped: 01675; ASI 01207-01208; LU-000154.

10) Mr. Sabella's written comments to the May 17, 2006, warning letter. Bates Stamped: ASI-00490-00491; 01665-01666.

11) Mr. Sabella's grievances filed July 12, 2006 and the Union's response. Bates Stamped: 01703-01704; 01725; 01736 and LU-000143.

12) Mr. Sabella's letter forwarded to the EEOC pertaining to complaints of retaliation dated June 22, 2006. Bates Stamped: 01600.

13) Undated warning letter from ASI to Sabella pertaining to an incident on July 6, 2007. (The letter mistakenly refers to July 6, 2007) and Mr. Sabella's response. Bates Stamped: 01664; 01679 and 01727-01728.

14) Mr. Sabella's complaint of discrimination against Local 1814 on July 20, 2006. Bates Stamped: LU-000175.

15) Mr. Sabella's letter to Patricia Arajuo of the EEOC dated July 31, 2006. Bates Stamped: 01605-01606.

16) Mr. Sabella's letter to the EEOC and Waterfront Commission dated August 5, 2006. Bates Stamped: 01607-01608.

17) Mr. Sabella's grievances dated August 7, 2006; August 8, 2006 and August 9, 2006. Bates Stamped: LU-000130-000137; LU-000146; 01617; 01685-01686.

18) Mr. Sabella's grievances dated September 7, 2006 and September 18, 2006 and the Pier Level hearing decision. Bates Stamped: LU-000128; 01689-01690; 01700-01702.

19) Undated warning letter issued to Sabella pertaining to an incident on September 21, 2006. Bates Stamped: LU-000155.

20) Mr. Sabella's grievance dated September 22, 2006. Bates Stamped: LU-000147.

21) Mr. Sabella's notes dated October 4, 2006 which were forwarded to the EEOC. Bates Stamped: 01659 and 01661-01662.

22) Mr. Sabella's suspension notice dated November 15, 2006. Bates Stamped: LU-000121.

23) Grievances dated February 14, 2007, March 1, 2007 and the Pier Level decision dated May 29, 2007. Bates Stamped: ASI 01255-01261.

24) Mr. Sabella's tax returns with IRS Form W2s for 2006-2011.

25) Grievance dated July 27, 2006.  Bates Stamped: LU 000138-140.

26) NYSA-ILA Collective Bargaining Agreement.

27) NYSA Wage report for Nicola Vitale. Bates Stamped: NYSA Response 000078-000097.

28) NYSA Wage report for Michael Sabella. Bates Stamped: NYSA Response 00031-000051.

29) NYSA Employee Personnel Information for Michael Sabella.  Bates Stamped: 0882-0904.

30) Grievance forms, Michael Sabella.  Bates Stamped: 001977-001986.

31) Grievance form, Michael Sabella, dated March 7, 2007.

32) Grievance forms, Michael Sabella, dated October 20, 2009.

33) Grievance forms, Michael Sabella, dated October 20, 2009.

34) Grievance forms, Michael Sabella, dated December 16, 2009.

35) Grievance forms, Michael Sabella, dated November 13, 2009.

36) Grievance forms, Michael Sabella, dated January 4, 2010.

37) Grievance forms, Michael Sabella, dated February 22, 2010.

38) Grievance forms, Michael Sabella, dated April 8, 2010.

39) Grievance forms, Michael Sabella, dated May 13, 2010.

40) Grievance forms, Michael Sabella, dated July 29, 2010.

41) Grievance forms, Michael Sabella, dated September 30, 2010.

42) Grievance forms, Michael Sabella, dated February 22, 2010.

43) Grievance forms, Michael Sabella, dated February 22, 2010.

44) Grievance forms, Michael Sabella, dated February 28, 2012.

45) Grievance forms, Michael Sabella, dated September 30, 2010.

46) Grievance forms, Michael Sabella, dated September 27, 2011.

47) Letter from Eric Seal, CFO, Red Hook Container Terminal, dated October 7,
2011.

48) Letters regarding May 2, 2006 alleged incident.  Bates Stamped: NYSA 0612-
0617.

49) Michael Sabella, Employment Application Form, dated 12/8/06.

50) Grievance forms, Michael Sabella, datedmarch 7, 2007.

51) Termination Letter, Michael Sabella, dated January 8, 2007.

52) Changes in Seniority Roster, NYSA_ILA.  Bates Stamped: NYSA Response
000263-320.

**DEFENDANT ASI INTENDS TO OFFER THE FOLLOWING EXHIBITS:**

1. Collective Bargaining Agreement between New York Shipping Association and the
International Longshoremen's Association, dated October 1, 2004.

2. "Respect and Dignity in the Maritime Industry Workplace," NYSA-ILA Anti-
Harassment and Anti-Discrimination Policy, dated October 14, 2005.

3. Charge of Discrimination filed by Michael Sabella with the EEOC, dated May 2,
2006.

4. Charge of Discrimination filed by Michael Sabella with the EEOC, dated July 20,
2006.

5. Letter from Louis Pernice to Michael Sabella regarding grievances and the NYSA-
ILA Anti-Harassment and Anti-Discrimination Policy, dated August 21, 2006.

6. Alfred Feliu's Final Report: Complaint of Nicola Vitale, with attachments.

7. Margaret A. McCausland's Report, dated November 30, 2006.

8.  Report of Pier Level Meeting regarding Sabella's termination from ASI, dated May 29, 2007, with copy of document entitled, "Grievance/Appeal Procedure."

9.  Letter from NYSA-ILA Committee on Absenteeism to David Morales regarding 5-week suspension from industry employment for absenteeism, dated October 5, 2005.

10. Table Summary of Morales's grievances.

11. Table Summary of Letters of Warning to Morales's suspensions.

12. Grievance filled out by Sabella on March 15, 2004.  Alleges he was operating Hustler and had to use the bathroom.  Bypassed his location and went toward bathroom.  Frank Jordan told him to go home when he finished.

13. Grievance filled out by Sabella on June 23, 2005.  He was not called in for the 7 pm shift on Father's Day.  Lower seniority employees were called in.

14. Grievance filled out by Sabella on March 20, 2006. Alleges he was bypassed for jobs at sugar house.

15. Grievance filled out by Sabella against Sal Buzzetta on May 1, 2006.  Alleges Buzzetta threatened, harassed and prevented him from operating the toploader.

16. Grievance filled out by Sabella on May 17, 2006.  Alleges that on May 12, 2006 Mike Suarez was placed in the toploader position ahead of Sabella.  Sabella complained to Buzzetta who told Suarez to get out of the machine and let Sabella operate.  Sabella asked Suarez to refresh him on the controls and Buzzetta yelled and instructed Suarez not to help Sabella or he would be checked out.  Sabella was removed from the machine.

17. Grievance filled out by Sabella on June 22, 2006. Alleges ASI is retaliating against him for complaining about being skipped over on job assignments.

18. Grievance filled out by Sabella on July 12, 2006. Alleges he was removed from the toploader and instructed that he will need to be retrained.  Received letter from ASI informing him that training is unavailable at the time; witnesses longshoremen with less seniority being trained.

19. Grievance filled out by Sabella on July 12, 2006. Sabella alleges he spoke to Union (Louise Pernice and Frank Agosta) on many occasions about harassment and his complaints are being ignored by the Union.

20. Grievance filled out by Sabella on July 20, 2006. Alleges he was bypassed on the toploader and lost wages on August 7, 10, 17 and 25.

21.     Grievance filled out by Sabella on September 7, 2006.  Alleges he was bypassed on the toploader.

22.     Grievance filled out by Sabella on March 7, 2007.  Alleges he received a check from NYCT for 4.5 hours straight time and 1 hour OT; alleges he should have received 6 hours straight time, 1 meal hour and 1 OT hour.  He did not leave his post until job was completed (7 am-3 pm)

23.     Testimony of Michael Sabella, Proceeding in the Matter of an Investigation Under Article IV of the Waterfront Commission Compact, dated March 18, 2005.

24.     Letter to Jim Melia from Clint Catucci regarding Michael Sabella's May 2, 2006 incident, Bates stamped LU-159.

25.     Letter to ILA Local 1814 from Clint Catucci regarding Michael Sabella's May 2, 2006 incident, Bates stamped LU-158.

26.     Letter to ILA Training Center from Clint Catucci regarding Michael Sabella's May 2, 2006 incident, Bates stamped ASI 1208.

27.     Letter to Michael Sabella from New York Container Terminal regarding Sabella's abandonment of work, dated January 8, 2007.

28.     Letter to Sabella from ASI regarding suspension pending investigation for threats of acts of violence, dated November 15, 2006.

29.     Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 1-week suspension from industry employment for absenteeism, dated February 4, 2004.

30.     Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 2-week suspension from industry employment for absenteeism, dated April 21, 2004.

31.     Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 1-week suspension from industry employment for absenteeism, dated August 4, 2004.

32.     Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 2-week suspension from industry employment for absenteeism, dated August 18, 2004.

33.     Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 2-week suspension from industry employment for absenteeism, dated August 2004, Bates stamped LU 169.

34.     Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 3-week suspension from industry employment for absenteeism, dated March 9, 2005.

35.   Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 2-week suspension from industry employment for absenteeism, dated August 17, 2005.

36.   Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 1-week suspension from industry employment for absenteeism, dated September 28, 2005.

37.   Warning letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding absences from ASI, dated January 1, 2006.

38.   Letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding 1-week suspension from industry employment for absenteeism, dated May 3, 2006.

39.   Letter from NYSA-ILA regarding withdrawal of May 2006 suspension based on adjustments to the record.

40.   Warning letter from NYSA-ILA Committee on Absenteeism to Michael Sabella regarding absences from ASI, dated November 15, 2006.

41.   Letters of Warning issued to Pagan from ASI dated: November 1, 2002; December 17, 2002; January 18, 2003; March 21, 2003; March 24, 2003; March 31, 2003; August 2, 2004; April 1, 2005; September 9, 2005; and July 25, 2006;

42.   Letters of Warning and Suspension from NYSA-ILA Committee on Absenteeism to Wilfredo Pagan for absenteeism, dated: July 30, 2003; August 6, 2003; September 10, 2003; September 22, 2004; April 27, 2005; September 7, 2005; October 5, 2005; January 11, 2006; and March 29, 2006.

43.   Letters from NYSA-ILA Committee on Drug and Alcohol Abuse regarding Pagan's 60-day suspension, dated April 19, 2005.

44.   All Deposition Transcripts, including: David Morales; Michael Sabella; Wilfredo Pagan; Frank Jordan; Louis Pernice; Sabato Catucci; Conoka Brown; Nicola Vitale; Salvatore Buzzetta; Dominick Alaimo, Juan Pabon, Alfred Feliu, Margaret McCausland, and the deposition transcripts of the interviews of parties before the Waterfront Commission.

45.   Plaintiff's Tax Returns, various years, and schedules, including W-2s, delivered to ASI's counsel in discovery.

46.   All Business Records respecting Seniority, Collective Bargaining Agreement, Comparable Salaries, Wages and Benefits including Vacation Pay and Annuities, and Deductions, Hours Worked, Penalties, Absenteeism, Suspensions, Training, Employment Records, and all other documents responsive thereto, Produced by NYSA in Response to a ASI Subpoena, June 12, 2012, and supplemental 2014 Subpoena.

47.     NYSA Documents on Container Volume.

48.     ASI Gang Lists.

49.     ASI Employee Work Hour and Pay Records (for both ASI and other employers.)

50.     NYSA Penalty Documents in the Port.

51.     Table of Michael Sabella's Yearly Earnings at Port Terminals for the period 7/9/02 – 9/30/02 based on NYSA Payroll Records.

52.     Table Summary of Michael Sabella Earnings at Port Terminals based on NYSA Payroll Records for the period 7/9/02 – 9/30/02 based on NYSA Payroll Records.

53.     Table of Michael Sabella Yearly Earnings at Port Terminals for the period 7/9/02 to present based on NYSA Payroll Records.

54.     Table Summary of Michael Sabella Earnings at Port Terminals based on NYSA Payroll Records for the period 7/9/02 to present based on NYSA Payroll Records.

55.     Table Summary of Michael Sabella Hours Worked Yearly based on NYSA Payroll Records for the period 10/7/01 – 9/30/12 based on NYSA Payroll Records.

56.     Table Summary of Michael Sabella Hours Worked Yearly based on NYSA Payroll Records for the period 10/7/01 to present based on NYSA Payroll Records.

57.     Employment Application Form:  Michael Sabella, dated June 23, 2005.  Bates stamped: ASI-NEW 02148.

58.     Employment Application Form:  Michael Sabella, dated February 6, 2006.  Bates stamped: ASI-NEW 02149.

59.     Letter from ASI to Pier Level Adjusters, dated May 10, 2007, related to the Grievance filed by Michael Sabella regarding the November 15, 2006 Suspension.  Bates stamped: ASI-NEW 02261.

60.     Letter from Louis Pernice to Michael Sabella, dated August 21, 2006, denying grievance dated August 7, 2006.  Bates stamped: ASI-NEW 00137.

61.     Letter from Louis Pernice to Michael Sabella, dated August 21, 2006, denying grievance dated August 9, 2006.  Bates stamped: ASI-NEW 00130.

62.     Letter from Louis Pernice to Michael Sabella, dated August 21, 2006, denying grievance dated August 8, 2006.  Bates stamped: ASI-NEW 00133.

63.     Letter of Warning from ASI to Michael Sabella, dated April 4, 2003.  ASI-NEW 00161.

64.     Letter from Clint Catucci, dated February 9, 2005, regarding Michael Sabella.  ASI-NEW 00160.

65.     Report of Pier Level Meeting, dated October 17, 2006, regarding grievances filed by Michael Sabella on: July 12, 2006; September 7, 2006; and September 18, 2006.  Bates stamped: ASI-NEW 00122-124.

66.     Letter of Warning from ASI to Michael Sabella, dated July 6, 2006.  ASI-NEW 00156

67.     Letter of Warning from ASI to Michael Sabella, dated September 21, 2006.  ASI-NEW 00155

68.     Waterfront Commission of New York Harbor report dated August 4, 2006, filed by Wilfredo Pagan against Nicola Vitale for alleged harassment.

69.     Complaint dated 8/5/06 to the Waterfront Commission filed by Michael Sabella.

70.     Waterfront Commission of New York Harbor report dated August 5, 2006 of interview of Nicola Vitale re alleged harassment charges made by Wilfredo Pagan against Nicola Vitale.

71.     Waterfront Commission of New York Harbor report dated August 8, 2006 of interview of Nicola Vitale re alleged harassment at Red Hook Container Terminal.

72.     Waterfront Commission of New York Harbor report dated August 10, 2006, filed by Michael Sabella re incident occurring between July 17 and July 19, 2006.

73.     Waterfront Commission of New York Harbor report dated August 11, 2006 of interview of Michael Sabella and Wilfredo Pagan re alleged harassment occurring on August 10, 2006.

74.     Waterfront Commission of New York Harbor report dated September 18, 2006 of interview of Wilfredo Pagan, Michael Langella, Richard Conte, Vito Rago and Nicola Vitale re alleged dispute between July 17 and July 19, 2006, involving Michael Sabella and Nicola Vitale at Red Hook Container Terminal.

75.     Waterfront Commission of New York Harbor report dated October 18, 2006, filed by Nicola Vitale re incident involving Michael Sabella on October 3, 2006 at Red Hook Container Terminal.

**DEFENDANT LOCAL 1814 INTENDS TO OFFER THE FOLLOWING EXHIBITS:**

1.      Relevant portions of the Collective Bargaining Agreement between NYSA and ILA effective October 1, 2004.

2.      NYSA-ILA Anti-harassment and Anti-Discrimination Policy, revised October 14, 2005.

3.      Morales's EEOC charge against ASI and Local 1814, dated February 28, 2006.

4.      Sabella's EEOC charge against Local 1814, dated July 20, 2006.

5.      Pagan's EEOC charge against Local 1814, dated August 8, 2006.

6.      Pernice's letter to Sabella dated August 21, 2006, referring him to NYSA-ILA EEO Officer.

7.      Pernice's letter to Morales dated August 21, 2006 referring him to NYSA-ILA EEO Officer.

8.      Pernice's letter to Morales dated November 16, 2006 referring him to NYSA-ILA EEO Officer.

9.      Alfred Feliu's Final Report:  Complaint of Nicola Vitale, with attachments.

10.     Margaret A. McCausland's report, dated November 30, 2006.

11.     Report of Pier Level Meeting re Morales's termination from ASI dated May 29, 2007, with copy of document entitled Grievance/Appeal Procedure dated September 2003.

12.     Report of Pier Level Meeting re Pagan's termination from ASI dated May 29, 2007, with copy of document entitled Grievance/Appeal Procedure dated September 2003.

13.     Report of Pier Level Meeting re Sabella's termination from ASI dated May 29, 2007, with copy of document entitled Grievance/Appeal Procedure dated September 2003.

14.     Answers of Plaintiff David Morales to the First Set of Interrogatories served by Defendant Local 1814.

15.     Answers of Plaintiff Wilfredo Pagan to the First Set of Interrogatories served by Defendant Local 1814.

16.     Answers of Plaintiff Michael Sabella to the First Set of Interrogatories served by Defendant Local 1814.

17.   NYSA's Work history of David Morales.

18.   NYSA's Work history of Wilfredo Pagan.

19.   NYSA's Work history of Michael Sabella.


**IT IS ORDERED** that the Court may, in order to prevent manifest injustice or for good cause shown, at the trial of the action or prior thereto upon application of counsel for either party, made in good faith, or upon motion of the Court, modify this Pretrial Order upon such conditions as the Court may deem just and proper.

**IT IS FURTHER ORDERED** that no additional witnesses or exhibits may be offered except on prompt notice or showing of good cause.

**IT IS FURTHER ORDERED** that the pleadings are deemed amended in accordance with this Order.

_____
    United States District Judge


APPROVED AS TO FORM AND SUBSTANCE.

/s/_____
    Attorney for Plaintiff


/s/_____
    Attorney for Defendant ASI


/s/_____
    Attorney for Defendant Local 1814