UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

MICHAEL SABELLA,

                Plaintiff,

      v.

AMERICAN STEVEDORING, INC., and
LOCAL 1814 INTERNATIONAL
LONGSHOREMAN'S ASSOCIATION, AFL-CIO,

                Defendants.

-----------------------------------------------------------------------x

                              06 – CV – 6566 (NG)(SMG)


### DEFENDANT AMERICAN STEVEDORING, INC.'S REVISED PROPOSED JURY INSTRUCTIONS AND *VOIR DIRE*


Janine G. Bauer, Esq.
SZAFERMAN, LAKIND
 BLUMSTEIN & BLADER, P.C.
*Attorneys for Defendant American
Stevedoring, Inc.*
101 Grovers Mill Road, Suite 101
Lawrenceville, NJ  08648
Telephone (609) 275-0400
Fax (609) 275-4511
Email: jbauer@szaferman.com

November 6, 2014

1

**Instruction No. 1 – Parties**

The plaintiff in this case is Michael Sabella. Mr. Sabella is a 48 year old Italian Catholic male.  The defendants are American Stevedoring, Inc. ("ASI"), Mr. Sabella's former employer, and Local 1814 International Longshoreman's Association, AFL-CIO ("ILA"), Mr. Sabella's union. The plaintiff worked as a Longshoreman for ASI and other employers at the Port up to November 15, 2006.

**Instruction No. 2 – Nature of the Case**

In this case, Mr. Sabella claims that he was subjected to an unlawful hostile work environment based upon sexual harassment by his [supervisor] [co-worker].  Mr. Sabella also claims that he was retaliated against by ASI for filing a complaint of sexual harassment with the U.S. Equal Employment Opportunity Commission. Further, Mr. Sabella claims that he was retaliated against by ASI for supporting his coworkers' complaint of discrimination. Finally, Mr. Sabella claims that his union, ILA, breached its Duty of Fair Representation with respect to the adverse actions taken against him by ASI, namely suspension and termination.

Both defendants, ASI and the Union, ILA, deny these allegations.

The issues before you in this lawsuit are whether or not Mr. Sabella was subjected to a hostile work environment due to sexual harassment, and retaliated against by ASI, and whether the Union, ILA failed in its duty to fairly represent Mr. Sabella.

**Instruction No. 3 – All Parties Equal Before the Law**

All persons and entities are equal before the law. The facts that the plaintiff is an individual and defendants are a corporation and labor union must not affect your decision in any

way. Each of the parties is entitled to the same fair, impartial, and conscientious consideration you give the other. You must carefully and impartially consider all of the evidence presented at trial, follow the law as it will be given to you by the Court, and reach a fair and just verdict.[1]

**Instruction No. 4 – Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence. Your authority is not to be exercised arbitrarily, however; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In determining the facts, your judgment must be applied only to that which is properly in evidence. From time to time the court will be called upon to pass upon the admissibility of certain evidence. You have no concern with the reasons for such rulings and you are not to draw any inferences from them. The rulings I will make during the trial are no indication of my views of what your decision should be as to whether or not the plaintiff has proved his case. Of course, you must dismiss from your mind, completely and entirely, any evidence which is ruled out of the case by the court.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers say in their opening statements, in their objections, or in their closing arguments is not evidence, although you may give consideration to the lawyers' arguments in making up your minds about the facts and about the inferences to be drawn from the facts. In this connection,

---

[1] Adapted from Sand et al., Modern Federal Jury Instructions, Civil, Instructions 71-10 & 72-1.2 See Sand, et al., Modern Federal Jury Instructions, Civil Instruction 71-2.

you should bear in mind that a question put to a witness is never evidence; it is only the answer that is evidence.

I also ask you to draw no inferences from the fact that upon occasion I may ask questions of certain witnesses. These questions are only intended for clarification or to expedite matters and certainly are not intended to suggest any opinions on my part as to the credibility of the witness or the verdict you should render. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.[2]

**Instruction No. 5 – The Nature of Evidence**

The evidence in this case will be the sworn testimony of witnesses, both given in court and given in depositions that will be read during the trial, the exhibits received in evidence, any stipulations, and any judicially noticed facts.

Testimony that is excluded or stricken is not evidence and may not be considered by you in reaching your verdict. If any testimony is received for a limited purpose, you must follow the limiting instructions I give you. Also, as previously discussed, the lawyers' questions are not evidence; it is the witnesses' answers that are evidence. At times, a lawyer on cross examination may ask the witness if a certain statement is true. If the witness denies the truth of the statement, then you may not consider the statement to be true simply because it was contained in the lawyer's question. On the other hand, if the witness agrees with the statement, then you may consider the statement to be true.

In general, there are two forms of evidence: direct and circumstantial. Direct evidence is when a witness testifies about something the witness knows by virtue of his or her own senses – something seen, or heard, or felt, and so on. On the other hand, circumstantial evidence is

---

[2] Adapted from Sand, et al., Modern Federal Jury Instructions, Civil Instructions 71-3, 71-5.

indirect evidence – evidence which tends to prove one fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence, but simply requires that your verdict be based on all of the evidence presented.  Here is the classic example used to illustrate the distinction between direct and circumstantial evidence:

Assume that when you came into the courthouse this morning, the sun was shining and it was a clear day. Now assume that as you were sitting here, you saw someone walk into the courtroom wearing a wet rain coat and carrying a wet umbrella. Then a few minutes later, another person walked into the courtroom with a wet coat and wet umbrella. Then another, and another. There are no windows in this courtroom, so you cannot look outside to see if it is raining. This means you have no direct evidence of that fact. But based on the other facts you have seen, it would be logical and reasonable for you to conclude that it was raining outside. This is the meaning of circumstantial evidence. Using reason and experience and common sense, you infer from one or more established facts – in this example, several persons with wet coats and wet umbrellas – the existence or non-existence of some other fact – in this example, that it was raining.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation, however. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted to draw, but are not required to draw, from the facts which have been established by either direct or circumstantial evidence. While you are considering the evidence presented to you, you are permitted to draw, from the facts you find to be proven, such

reasonable inferences as would be justified in light of your reason, experience, and common sense.[3]

**Instruction No. 6 – Preponderance of the Evidence**

In a civil action such as this, the burden is on the plaintiff to prove each and every element of his claim by a "preponderance of the evidence." Likewise, the burden is on the defendants to prove affirmative defenses by a "preponderance of the evidence." I will explain the legal elements of the plaintiff's claim next. For now, I will explain to you what is meant by a "preponderance of the evidence." Some of you may have heard of "proof beyond a reasonable doubt," which is the standard in a criminal trial. That requirement does not apply to a civil trial such as this, and you must put it out of your mind.  What does a "preponderance of the evidence" mean? To prove something by a "preponderance of the evidence" means such evidence that, when considered and compared with the evidence opposed to it, produces in your minds the belief that what is sought to be proved is more likely true than not true. In other words, a preponderance of the evidence means the greater weight of the evidence. It means evidence that tips, however slightly, in favor of the party with the burden of proof. However, if the evidence on a question is evenly balanced, then it has not been proven by a preponderance of the evidence.

A preponderance of the evidence refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim or affirmative defense has been proved by a preponderance of the evidence, you may consider all relevant testimony of all witnesses, regardless of who may have called them, and all relevant exhibits received in evidence, regardless of who may have produced them.[4]

---

[3] Adapted from Sand, et al., Modern Federal Jury Instructions, Civil Instructions 74-1, 74-2, 75-1.
[4] Adapted from Sand, et al., Modern Federal Jury Instructions, Civil Instructions 73-1, 73-2, 87-67.

**Instruction No. 7 – Hostile Work Environment**

The Plaintiff's hostile work environment claim is brought under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and under the New York City Human Rights Law. They are laws that prohibits discrimination in employment. Underall three laws, an employer can be held liable for subjecting an employee to a hostile work environment, however, what the Plaintiff must prove differs.

To prove a hostile work environment under Title VII, the federal statute, and the New York State Human Rights Law, Mr. Sabella must prove each of the following elements by a preponderance of the evidence:

   (1)  the conduct complained of wasunwelcome;

   (2)  the conduct was sexual in nature or directed at Plaintiff because of his sex;

   (3)  the conductwas both objectively and subjectively offensive; and

   (4)  the conductwas sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment by creating an abusive working environment.[5]

"Unwelcomeconduct" means conduct that was not solicited or encouraged by the Plaintiff and that is offensive, insulting, humiliating, or intimidating.

Harassment is "objectively offensive" if a reasonable person would perceive it as hostile or abusive. In determining whether the alleged harassment in this case was "objectively" offensive, you may consider, among other things, the frequency and severity of the incidents, whether they were physically threatening or humiliating, whether they interfered with the plaintiff's job performance, and whether they affected the plaintiff psychologically. However,

---

[5] Adapted from Faculty of Federal Advocates *Ad Hoc* Committee, Model Employment Law Jury Instructions (2013), at 12.

no single factor is required.  You must consider the evidence as a whole and the totality of the circumstances, such as the nature of the conduct and the context in which it occurred.

Harassment is "subjectively offensive" if the plaintiff personally perceived it to be hostile or abusive.

The alleged harassment must also be sufficiently severe or pervasive to create an abusive working environment.  As a general rule, for harassment to be deemed "sufficiently pervasive", the incidents must be more than isolated or episodic; they must be sufficiently continuous and concerted.  However, since only severity or pervasiveness is required, there is no fixed number of incidents that a plaintiff must endure, for even a single incident can create a hostile work environment if it is sufficiently severe.  The test is whether the harassment is of such quantity or quality that a reasonable employee would find the work environment to be hostile or abusive.[6]

The same test is applied under the city civil rights statute, except the requirement for "severe and pervasive" conduct is eliminated and, instead, you must consider whether the conduct amounts to more than 'petty slights and trivial inconveniences'.[7]

### Instruction No. 8 – Employer Liability for Hostile Work Environment

If the Plaintiff proves he was subjected to a hostile work environment, the next question is whether the Defendant is liable for this discriminatory conduct.  The test for the defendant's liability is different depending on whether the harassment was perpetrated by a supervisor or by a co-worker.  Therefore, you must first determine whether Salvatore Buzzetta was Mr. Sabella's supervisor or co-worker, regardless of his title.  Under Title VII, the federal civil rights statute, an employee is a "supervisor" when the employer has empowered that employee to take tangible

---

[6] Adapted from Second Circuit case law discussing well-established principles of Title VII hostile work environment claims.  *See, e.g.*, *Redd v. New York State Div. of Parole*, 678 F.3d 166, 174-77 (2d Cir. 2012).
[7] *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 79-80 (1st Dept 2009).

employment actions against the Plaintiff.[8]  A "tangible employment action" means a significant change in employment status, such as hiring, firing, laying off, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in wages or benefits.  On the other hand, under the city civil rights statute, a person is a supervisor if he had the authority to direct the employee's daily work activities.[9]

If you find that Plaintiff has proven that he was subjected to a hostile work environment by a <u>supervisor</u> under the city statute, then you must find in favor of the Plaintiff.[10]

On the other hand, if you find that Plaintiff was subjected to a hostile work environment by a <u>co-worker</u>, rather than a supervisor under the federal statute and the state statute, then the burden of proof is on the Plaintiff under both the federal and statestatutes to prove by a preponderance of the evidence that:

(1)      American Stevedoring's management either knew about or reasonably should have known about the alleged sexual harassment by Plaintiff's co-worker; and

(2)      the employer failed to take reasonably prompt corrective action.

If the pPlaintiff satisfies his burden of proof, the defendant employer will be liable for the co-worker harassment, unless the Defendant employer has proven by a preponderance of the evidence that (1) the Defendant employer maintainedan effective complaint procedure which provided employees with reasonable options for reporting unwanted work place behavior; and (2) the Plaintiff unreasonably failed to use the complaint procedure.  If the Plaintiff does not satisfy his burden of proof, the Defendant employer will not be liable.

---

[8] *Vance v. State Ball Univ.*, 570 U.S. ___, 133 S. Ct. 2434 (2013).
[9] *O'Neil v. R.C. Diocese of Brooklyn*, 31 Misc. 3d 1219, 927 N.Y.S.2d 818 (Sup. Ct. 2011); *Cajamarca v. Regal Entm't Grp.*, 2013 NY Slip Op 32615[U] (Sup. Ct. Oct. 17, 2013).
[10] *Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (N.Y. 2010) (*Faragher/Ellerth* defense inapplicable to NYCHRL).

**Instruction No. 9 – Retaliation against Defendant ASI**

The Plaintiff claims that the Defendant-employer violated Title VII, the New York State Human Rights Law, and the New York City Human Rights Law by retaliating against him for engaging in protected activities.  The purpose of these federal and city civil rights statutes is to protect the rights of individuals to be free of workplace discrimination and harassment.  The anti-retaliation protections in these statutes provide that it is unlawful for an employer to retaliate against an individual either because he in good faith opposed what he believed were discriminatory or retaliatory employment practices or because he has participated in a protected activity, such as making a complaint or charge of discrimination.

To succeed on a claim of retaliation under Title VII, the federal statute, and the New York State Human Rights Law, the Plaintiff must prove that:

(1)  Plaintiff engaged in an activity protected under Title VII;

(2)  Defendant took an action against Plaintiff that was materially adverse; and

(3)  Defendant would not have taken the adverse action but for the Plaintiff's engagement in a protected activity.[11]

Protected activity includes both <u>opposition to</u> a practice reasonably believed to be unlawful discrimination and <u>participation in</u> an employment discrimination proceeding. "Protected opposition" includes complaining to anyone about alleged discrimination, including sexual harassment.  "Protected participation" includes making a charge of discrimination, harassment or retaliation under Title VII.  In this case, Plaintiff asserts that he filed a charge of discrimination and harassment under Title VII with the Equal Employment Opportunity

---

[11] Adapted from Faculty of Federal Advocates *Ad Hoc* Committee, Model Employment Law Jury Instructions (2013), at 48.

Commission.  To establish protected participation, the Plaintiff must prove that he actually filed the charge, but the Plaintiff does not need to prove that the charge was successful.

A "materially adverse action" is suspension and termination.[12]

In order to prove that Plaintiff's employer would not have taken the adverse action "but for" the Plaintiff's protected activity, Plaintiff must establish that his protected activity was a but for cause of the alleged adverse action by the employer.[13]  An employer may be held liable for retaliation even if other factors contributed to the employer making the challenged decision, so long as retaliation was the factor that made a difference.[14]

If you find that the Plaintiff has proven each of these elements of retaliation under Title VII and the New York State Human Rights Law by a preponderance of the evidence, then you must find for the Plaintiff and against the Defendant employer on this claim.  If, on the other hand, you find that Plaintiff has failed to prove any one or more of these elements by a preponderance of the evidence, then you must find against him on the Title VII and New York State retaliation claims and in favor of the Defendant employer.

On the other hand, under the City civil rights statute, the Plaintiff must prove that:

(1)    he participated in a protected activity by making a complaint of discrimination, harassment, or a hostile work environment;

(2)    the defendant knew about his complaint;

(3)    the defendant took an employment action that disadvantaged the plaintiff *in any manner*; and

---

[12] Adapted from Faculty of Federal Advocates *Ad Hoc* Committee, Model Employment Law Jury Instructions (2013), at 50.
[13] *Univ. of Texas S.W. Medical Center v. Massau*, 133 S. Ct. 2517, 2534 (2013).
[14] Adapted from Faculty of Federal Advocates *Ad Hoc* Committee, Model Employment Law Jury Instructions (2013), at 52.

(4)      a causal connection existed between the protected activity and the negative

employment action.

There are two important distinctions between the federal, state and city statutes concerning retaliation.  First, under the city civil rights statute, retaliatory actions need not be "materially adverse" like under Title VII and New York State; rather, any action that disadvantages the plaintiff may constitute a retaliatory action.[15]  Second, the city civil rights statute does not require 'but for' causation; rather, the plaintiff need only prove that the protected activity was a motivating factor for the employer's retaliatory action.[16]

If you find that the Plaintiff has proven each of these elements of retaliation in violation of the New York City Human Rights Law by a preponderance of the evidence, then you must find for the Plaintiff and against the Defendant employer on this claim.  If, on the other hand, you find that Plaintiff has failed to prove any one or more of these elements by a preponderance of the evidence, then you must find against him on this claim and in favor of the Defendant employer.

**Instruction No. 10 – Breach of the Duty of Fair Representation**

The plaintiff's final claim is that the union breached its duty to fairly represent the plaintiff, as one of its members, in failing to investigate or otherwise process the plaintiff's grievance against the employer under the grievance procedure set forth in the collective bargaining agreement or by failing to represent plaintiff's interests in good faith, without hostility or discrimination.[17]  To support a breach of the duty of fair representation claim, the plaintiff must prove that the employer's action violated the terms of the collective bargaining

---

[15] *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 69-72 (1st Dept 2009).
[16] *Russo v. N.Y. Presbyterian Hosp.*, 09-cv-5334 (MKB), 2013 WL 5346427, at *19 (E.D.N.Y. Sept. 23, 2013).
[17] *See Abrams v. Carrier Corp.*, 434 F.2d 1234, 1251 (2d Cir. 1970).

agreement and that the union breached its duty to act honestly and in good faith and to avoid

arbitrary and discriminatory conduct.[18]

  With regard to this claim, you are instructed that a union <u>does</u> have a legal duty to

represent fairly the interests of its members in protecting their rights under a collective

bargaining agreement.  However, an individual does not have an absolute right to require the

union to pursue a grievance against the employer.  The test is one of basic fairness.  So long as

the union acts in good faith, the law permits a union to exercise broad discretion in determining

whether a particular employee's grievance should be pursued against the employer under the

collective bargaining agreement.  The union may consider, for example, the cost of the

proceeding weighed against its assessment of the likelihood of success if the grievance is

pursued.  So, even if an employee's grievance has merit, mere negligence of the exercise of poor

judgment on the part of the union does not, in and of itself, constitute a breach of its duty of

representation.  On the other hand, when a union acts arbitrarily or capriciously, or in bad faith

and dishonestly, in refusing to process a meritorious grievance or representing a union member's

interests during a grievance proceeding, it violates the duty it has to represent fairly the union

member.[19]

  A union's actions are arbitrary only if, in light of the factual and legal landscape at the

time of the union's actions, the union's behavior is so far outside a wide range of reasonableness

as to be irrational; in other words, a union's decision is arbitrary if it lacks a rational basis.  To

---

[18] Ninth Circuit Manual of Model Civil Jury Instructions, Employee Claim Against Union and/or Employer- Labor Management Relations Act § 301.
[19] Eleventh Circuit, Pattern Jury Instructions, Civil Cases (2005), 194-95.

establish that a union acted in "bad faith," a plaintiff must provide substantial evidence of fraud, deceitful action, or dishonest conduct.[20]

**Instruction No. 11 – Back Pay**

If you find that Defendant-employer unlawfully retaliated against Plaintiff on the basis of his protected activity, then you must determine if Plaintiff established any lost wages had Plaintiff continued to be employed at ASI, and other employment benefits Plaintiff would have received from ASI had he not been suspended and terminated between November 15, 2006 and September 30, 2011.

If you find that Defendant-union breached its duty of fair representation, then you must award back pay damages against the union.

**Instruction No. 12 – Compensatory Damages – Back Pay**

In awarding compensatory damages, you are not to award damages for the amount of wages that Plaintiff would have earned, either in the past or in the future, if he had continued in employment with Defendant. These elements of recovery of wages that Plaintiff would have received from Defendant are called "back pay" and "front pay." Under the statutes applicable here, the determination of "back pay" and "front pay" is for the Court.

**Instruction No. 13 – Mitigation of Damages**

Plaintiff has a duty under the law to "mitigate" his damages – that means that Plaintiff must take advantage of any reasonable opportunity that may have existed under the circumstances or reduce or minimize the loss or damage caused by Defendants, ASI and the

---

[20] Ninth Circuit Manual of Model Civil Jury Instructions, Employee Claim Against Union and/or Employer- Labor Management Relations Act § 301.

union, ILA.  It is Defendants' burden to prove that Plaintiff has failed to mitigate damages.  In this case, Defendants ASI and ILA claim that Plaintiff failed to minimize damages because he was let go from New York Container Terminal for failure to follow work rules in January 2007, terminated from Ceres, the Brooklyn cruise terminal, in 2010, and because he did not make himself available for work as often between 2007 and 2011 as he had while he was working at ASI between 2003 and 2006. So if Defendants persuade you by a preponderance of the evidence that Plaintiff failed to take advantage of  suitable employment opportunities that were reasonably available to him, or that he lost these opportunities through misconduct, then you must reduce the amount of Plaintiff's damages by the amount that could have been reasonably obtained if he had taken advantage of such  opportunities, or if he had maintained employment after taking advantage of the opporutnit(y)(ies).[21]

---

[21] Adapted from Faculty of Federal Advocates Ad Hoc Comm., Model Employment Law Jury Instructions (2013) at p. 62.

**Instruction No. 14 – Attorney's Fees**

In assessing damages, you must not consider attorney fees or the costs of litigating this case.  Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**Instruction No. 15 – Apportionment of Damages**

If you have found for the Plaintiff and against both the employer and the union, you will then have the task of apportioning those damages between the employer and the union.  In making the apportionment you should follow this guideline:

Generally, liability is apportioned between the employer and the union according to the damage caused by the fault of each.[22]  The employer is liable for damages, such as lost wages, that are due solely to its acts that constituted a hostile work environment and retaliation against the plaintiff.  However, any <u>increases</u> in lost wages caused by the Union's failure to process Plaintiff's grievance should be charged to the union and not to the employer.  Thus, if you find that the Plaintiff would have been reimbursed for lost wages and/or would have been reinstated to the job that the Plaintiff held with the employer but for the breach by the union to fairly represent the Plaintiff, then you must apportion those lost wages between the Defendants according to the extent to which the union's breach of duty to fairly represent caused increases to the wages lost by Plaintiff.[23]

---

[22] *Vaca v. Sipes*, 386 U.S. 171 (1967), at 218-230; *see also Bowen v. U.S. Postal Service,* 459 U.S. 212 (1983).
[23] Adapted from Eleventh Circuit Pattern Jury Instructions, Civil Cases 2005, 194-96.

**Instruction No. 16 – Nominal Damages**

If you return a verdict for the Plaintiff, but find that the Plaintiff has failed to prove that he suffered any loss of back pay, or failed to establish the amount of the loss, then you must award the Plaintiff the nominal amount of $1.00.[24]

**Instruction No. 17 – Punitive Damages**

If you find the Defendant-employer liable for subjecting the plaintiff to a hostile work environment and/or for retaliation, then you may, but are not required to, consider awarding punitive damages, in addition to other damages. The purpose of punitive damages is to punish a defendant for its wrongful conduct and to deter the defendant and others from engaging in similar conduct in the future.

You may award punitive damages to the plaintiff only if he proves by a preponderance of the evidence that the defendant engaged in  sexual harassment resulting in a hostile work environment and/or retaliation with malice or with reckless indifference to the civil rights of the Plaintiff to be free from such  harassment and/or retaliation.

In deciding whether or not to award any punitive damages, you should consider the degree to which the defendant should be punished for its wrongful conduct, whether the defendant may be adequately punished by an award of economic or nominal damages only, or whether economic or nominal damages are inadequate to punish the wrongful conduct. You also should consider whether economic or nominal damages standing alone are likely to deter or prevent the defendant from again performing any wrongful acts it may have performed. Likewise, you should consider whether an award of punitive damages is likely to deter other persons from performing wrongful acts similar to those that the defendant may have committed.

---

[24] *Claudio v. Mattituck-Cutchogue Union Free School Dist.*, 955 F. Supp. 2d 118, 161 (EDNY 2013).

An employer's anti-discrimination policies and procedures may be considered in mitigation of the amount of punitive damages recoverable.[25]

Lastly, you may consider the financial resources of the defendant in fixing the amount of punitive damages. If you decide to award punitive damages, you must use sound reason in setting the amount – it must not reflect bias, prejudice, or sympathy towards any party. But the amount may be as large as you believe necessary to fulfill the purposes of punitive damages.[26]

Respectfully submitted,

By: _____

Janine G. Bauer, Esq.
SZAFERMAN, LAKIND
BLUMSTEIN & BLADER, P.C.
*Attorneys for Defendant*
*American Stevedoring, Inc.*
101 Grovers Mill Road, Suite 101
Lawrenceville, NJ  08648
Telephone (609) 275-0400
Fax (609) 275-4511
Email: jbauer@szaferman.com

---

[25] <u>Zakrzewska v. New School</u>, 14 N.Y. 3d 469, 480, 902 N.Y.S. 2d 838 (N.Y. 2010).

[26] Adapted from Sand, et al., Modern Federal Jury Instructions, Civil Instructions 77-5, 87-92; 42 U.S.C. § 1981a(b)(1); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 572-73 (2d Cir. 2011); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 356-57 (2d Cir. 2001); U.S. First Circuit Model Jury Instruction for Employment Discrimination Cases 9.1; U.S. Third Circuit Model Civil Jury Instruction 6.4.2.

FAILURE TO MITIGATE

Plaintiff is required to make reasonable efforts to minimize damages. In this case, the Defendant claims that Plaintiff failed to minimize damages because [state the reason, *e.g.*, Plaintiff failed to use reasonable efforts to find employment after discharge.]

It is the Defendant's burden to prove that Plaintiff failed to make reasonable efforts to minimize [his][her] damages. This defense is proven if you find by a preponderance of the evidence that:

1.   There were or are substantially comparable position which Plaintiff could have discovered and for which Plaintiff was qualified; and

2.   Plaintiff failed to use reasonable diligence to find suitable employment. "Reasonable diligence" does not require that Plaintiff be successful in obtaining employment, but only that [he][she] make a good faith effort at seeking employment.

If the Defendant has proven the above, then you must deduct from any award of back pay the amount of pay and benefits Plaintiff could have earned with reasonable effort.

**Notes on Use**:

There is authority to support language defining "reasonable diligence" to the effect that, "you may find that Plaintiff failed to use reasonable diligence during periods where Plaintiff was not ready, willing and available for employment," e.g., Plaintiff has enrolled in school. *See Miller v. Marsh*, 766 F.2d 490, 493 (11th Cir. 1985); *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 267-268 (10th Cir. 1975) *overruled on other grounds; Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983).

However, where the Defendant fails to bring forward any evidence supporting the first prong of this instruction, then the Defendant has failed to meet its burden of showing that Plaintiff failed to mitigate damages, and the Plaintiff's status as a full-time student is then irrelevant. *Goodman v. Fort Howard Corp.*, No. 93-7067, 1994 U.S. App. LEXIS 17507, *11 (10th Cir. July 18, 1994) (unpublished).

Those cases stand in contrast to cases wherein the enrollment period is nonetheless recognized as a "reasonable" attempt to mitigate damages: *Bray v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1275-76 (4th Cir. 1985); *Dailey v. Societe Generale*, 108 F.3d 451, 455-57 (2d Cir. 1997); *Smith v. American Serv. Co.*, 796 F.2d 1430, 1431-32 (11th Cir. 1986); *Hanna v. American Motors Corp.*, 724 F.2d 1300, 1307-09 (7th Cir. 1984). Those cases recognize that only "reasonable" efforts to mitigate damages are required, not ultimate success.

Accordingly, the practitioner is encouraged to review these cases, and to determine on a case-by-case basis whether enrollment in school may constitute a failure to mitigate damages.