UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MICHAEL SABELLA,                                Docket No.:
                                                06 – CV – 6566 (NG)(SMG)
        Plaintiff,

v.

AMERICAN STEVEDORING, INC., and
LOCAL 1814 INTERNATIONAL
LONGSHOREMAN'S ASSOCIATION, AFL-CIO,

        Defendants.

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO RULES 50 & 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE AGAINST DEFENDANT AMERICAN STEVEDORING, INC.

LEVINE & BLIT, PLLC
*Attorneys for Plaintiff*

Empire State Building
350 Fifth Avenue, 36th Floor
New York, New York 10118
Phone: (212)967-3000
Fax: (212)967-3010

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | STATEMENT OF FACTS | 1 |
| III. | RELEVANT PROCEDURAL HISTORY | 2 |
| IV. | ARGUMENT | 3 |
| | 1. Legal Standard under F.R.C.P. Rule 50(b) | 3 |
| | 2. The Overwhelming Evidence Elicited at Trial Demonstrates that ASI's Retaliation Against Sabella Caused Sabella to Suffer at least $24,000 in Economic Loss | 4 |
| |     a. Plaintiff Immediately Suffered Damages, and Immediately Took Steps to Mitigate his Damages | 5 |
| |     b. Plaintiff's Separation from NYCT Was Not For Cause, and Was Against the Industry's Collective Bargaining Agreement | 7 |
| |     c. Plaintiff Further Mitigated his Damages By Calling In for Work Hundreds of Times in Which He Was Not Offered Any Work | 9 |
| V. | PLAINTIFF RESPECTFULLY RESQUESTS A NEW TRIAL ON HIS CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT BASED UPON SEX AGAINST ASI | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*DePascale v. Sylvania Electric Products, Inc.*,
710 F. Supp. 2d 275, 279 (E.D.N.Y. 2010)                                                                          3, 4

*Galdieri-Ambrosini v. National Realty & Dev. Corp.*,
136 F.3d 276, 289 (2d. Cir. 1998)                                                                                 3

*Green v. Groneman*,
634 F. Supp.2d 274, 284 (E.D.N.Y. 2009)                                                                           3

*LeBlanc-Sternberg v. Fletcher*,
67 F.3d 412, 429 (2d Cir. 1995)                                                                                   4

*Diesel v. Town of Lewisboro*,
232 F.3d 92, 103 (2d Cir. 2000)                                                                                   4

*Thurman v. Yellow Freight Systems, Inc.*,
90 F.3d 1160, 1168, *amended*, 97 F.3d 833 (6th Cir. 1996)                                                        8

## I. PRELIMINARY STATEMENT

Plaintiff Michael Sabella ("Sabella" or "plaintiff") hereby respectfully submits his Memorandum of Law in Support of Sabella's Motion for Judgment as a Matter of Law against defendant American Stevedoring, Inc. ("ASI") pursuant to Rule 50(b) of the Federal Rules of Civil Procedure ("F.R.C.P") on the issue of whether the overwhelming evidence presented at trial demonstrates that plaintiff suffered at least $24,000.00, and up to $114,000, in economic loss and reasonable and fair minded jurors could not arrive at the determination that plaintiff suffered no economic loss as a result of ASI's retaliation, as the jury in the instant civil action did. Additionally, the jury could not reach a unanimous verdict on plaintiff's hostile work environment claim resulting in a mistrial. As such, plaintiff respectfully requests that this Court set aside the jury's verdict on the issue of economic loss caused by ASI's retaliation and order a new trial for plaintiff's hostile work environment cause of action against ASI.

## II. STATEMENT OF FACTS

For the Court's reference, only facts relevant to the instant motion are articulated herein.

Plaintiff was employed by defendant ASI from on or about 2002 to November 2006. (Exhibit A, p4:10-12)[1] On May 2, 2006, plaintiff filed an EEOC Charge against defendant ASI, alleging sexual harassment, discrimination and retaliation. (Exhibit A, p18:11-15; Exhibit B[2]) Soon thereafter, a frivolous complaint of discrimination and retaliation was brought against plaintiff by Nicola Vitale ("Vitale"), though plaintiff and

---

[1] For all citations to (Exhibit A, pX:X-X), please see the trial transcript of the testimony of Michael Sabella on November 10, 2014, attached to the Affirmation of Matthew J. Blit in Support of Plaintiff's Motion, as Exhibit 'A'.
[2] For all citations to Exhibit B, please see the EEOC Charge of Discrimination by Michael Sabella against ASI, attached to the Affirmation of Matthew J. Blit in Support of Plaintiff's Motion, as Exhibit 'B'

[1]

Vitale were the same race, religion and national origin, and though Vitale had never before engaged in a protected activity, which would warrant a retaliation claim. Nonetheless, an investigation was launched against plaintiff by Albert Feliu ("Feliu"), the industry EEO officer representing both the employers and unions. (Exhibit D, pp40-41:7-19)[3] Notably, though Feliu was the industry's EEO officer, he took no steps to investigate plaintiff's claims of discrimination against ASI and Local 1814 (Exhibit D, 11/14/14, pp42-43:2-6), but spent a month investigating Vitale's frivolous complaint against plaintiff.

Upon completion of the Feliu investigation, ASI permanently suspended plaintiff in retaliation for plaintiff's complaint of discrimination against ASI, effectively ending plaintiff's employment with the company. Plaintiff filed a grievance with his union, Local 1814, in response to ASI's permanent indefinite suspension; however, the grievance was upheld. Immediately thereafter, and through at least 2010, plaintiff took steps to mitigate his damages resulting from his retaliatory termination from ASI; however, Plaintiff suffered significant economic loss due to ASI's retaliatory acts.

### III. RELEVANT PROCEDURAL HISTORY

In the instant civil action, trial commenced on November 10, 2014 and continued until November 21, 2014, when the jury returned its verdict after approximately two days of deliberations. Plaintiff brought a single cause of action against defendant Local 1814 International Longshoremen's Association, AFL-CIO ("Local 1814"), the breach of the duty of fair representation. Against his former employer, defendant American

---

[3] For all citations to (Exhibit D, pX:X-X), please see the trial transcript of the testimony of Alfred Felieu, on November 14, 2014, attached to the Affirmation of Matthew J. Blit in Support of Plaintiff's Motion, as Exhibit 'D'

[2]

Stevedoring, Inc. ("ASI"), Sabella brought causes of action for (a) hostile work environment harassment based upon sex and (b) retaliation. In its verdict, the jury found that Sabella had not proven by a preponderance of the evidence that Local 1814 had breached its duty of fair representation and, as a result, the jury did not reach the question of whether Local 1814 was jointly or severally liable for Sabella's economic loss. In addition, the jury found that Sabella had not proven any economic loss. The jury returned a verdict in favor of Sabella against ASI on the retaliation cause of action, awarding $60,000.00 in punitive damages. There was a hung jury on Sabella's cause of action for hostile work environment harassment based upon sex and the Court declared a mistrial.

## IV. ARGUMENT

### 1. Legal Standard under F.R.C.P. Rule 50(b)

"Rule 50 of the Federal Rules of Civil Procedure provides for entry of judgment as a matter of law where, a reasonable jury would not have a legally sufficient evidentiary basis to find in favor of the non-moving party as to the claim at issue." *DePascale v. Sylvania Electric Products, Inc.*, 710 F. Supp. 2d 275, 279 (E.D.N.Y. 2010) (internal quotation marks omitted). "The motion is properly granted only if 'the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find' in that party's favor." *Id.* (quoting *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d. Cir. 1998), and *Green v. Groneman*, 634 F. Supp.2d 274, 284 (E.D.N.Y. 2009)). "The court is required to consider the evidence in the light most favorable to the party against whom the motion is made, and to give that party the benefit of all reasonable inferences that the jury might have drawn in that party's favor

[3]

from the evidence. The court cannot assess the weight of the evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *DePascale*, 710 F. Supp. 2d at 279 (citing *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995)). As such, "[a] motion for judgment as a matter of law can only be properly granted where, 'there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonably and fair minded men could not arrive at a verdict' against the movant." *DePascale*, 710 F. Supp. 2d at 279 (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

### 2. The Overwhelming Evidence Elicited at Trial Demonstrates that ASI's Retaliation Against Sabella Caused Sabella to Suffer at least $24,000 in Economic Loss

As per stipulation among the parties at trial, should plaintiff prove that defendant ASI retaliated against plaintiff (as plaintiff did at trial as per the jury Verdict), economic damages will be determined as follows:

- $0, if plaintiff proves that he suffered damages and defendant(s) prove that plaintiff failed completely to mitigate his damages;

- $24,000, if plaintiff proved that he suffered damages and defendant(s) prove that plaintiff partially mitigated his damages; or,

- $114,000, if plaintiff proved that he suffered damages and defendant(s) fail to prove that plaintiff did not mitigate his damages.

As ASI retaliated against plaintiff, and plaintiff mitigated his damages, plaintiff is owed damages, including back pay, for such retaliation.

[4]

### a. Plaintiff Immediately Suffered Damages, and Immediately Took Steps to Mitigate his Damages

Subsequent to his retaliatory termination from ASI, plaintiff immediately suffered damages, and took immediate steps to mitigate his damages. Within days of being suspended from ASI on November 17, 2006, plaintiff began working for New York Container Terminal ("NYCT"). Defendant Union Exhibit 19C (Exhibit G)[4] proves this.

As per week ending 11/19/06, plaintiff began working for NYCT. (Exhibit G, pages 'NYSA RESPONSE 372-390') However, while plaintiff worked at NYCT, he was not being given full-time work. Notably, plaintiff regularly worked full-time and overtime while with ASI. Accordingly, plaintiff's income suffered greatly immediately following his exit from defendant ASI.

This is evident from Mr. Sabella's payroll records, which were provided by defendant Local 1814 at trial. As an example, in the week of his separation from ASI in November 19, 2006, plaintiff worked a total of 47.5 hours, with the majority of work coming from ASI. (Exhibit G, pages 'NYSA RESPONSE 372, 373, 375') Two weeks prior to his separation from ASI, plaintiff worked 56 hours at ASI. (*Id.*, 375) Four weeks prior to his separation from ASI, plaintiff worked a total of 49.5 hours, again with the majority of work coming from ASI. (*Id.*, 373-375) Five weeks prior to his separation from ASI, plaintiff worked a total of 53 hours. (*Id.*, 373, 375) Finally, six weeks prior to his separation from ASI, week ending 10/15/06, plaintiff worked a total of 60 hours. (*Id.*, 374-375) In these five work weeks *prior to his separation* from ASI, plaintiff averaged 53.2 hours per week, due to the consistent work that he received from ASI.

---

[4] For all citations to Exhibit G, please see Sabella's yearly payroll records as maintained by NYSA, attached to the Affirmation of Matthew J. Blit as Exhibit G.

[5]

This steady workload was due to the fact that ASI was plaintiff's home port, and he was on the "list", which guaranteed him work before other longshoremen:

> Q. What impact did you – did your suspension from ASI have on your ability to get steady work as a longshoreman?
>
> SABELLA. When you're a longshoreman on a steady pier, you basically know you're going to work every day unless there's no work, but if you're steady on the pier and your seniority brings you there, you know you're going to work.
>
> So when I got suspended from American Stevedoring…you have to call for orders and you got to hope that the pier's short – the industry is short, so that your seniority can get you work the next day…
>
> You know, it's not – you no longer have a steady job. You have to hope that you get a job the next day. (Exhibit F., 11/12/14, p12:1-14)

When plaintiff lost his position with ASI, he lost his 'home pier' and, thereby, his seniority, for approximately five (5) years.

> Q. After you were banned from the company, were you on any other pier list?
>
> SABELLA. No. After I was banned from American Stevedoring, I became basically what they call a floater. It's like you don't have a pier.
>
> Q. …Did you ever get onto a pier list again since ASI?
>
> SABELLA. Yeah, in 2010, I believe. (Exhibit F., 11/12/14, p21:6-13)

Immediately after his separation from ASI, the amount of work that plaintiff received plummeted, though he clearly searched for work as evident by the fact that he continued to work at another port. Therefore, plaintiff's economic loss began from the very first week that he left ASI.

[6]

For week ending 11/24/06, the first full week *after* his separation from ASI, plaintiff worked 42 hours. (Exhibit G, pages 'NYSA RESPONSE 372') For week ending 12/3/06, the second full week after his separation from ASI, plaintiff worked 32.5 hours. (*Id.*) For week ending 12/10/06, the third full week after his separation from ASI, plaintiff worked 30 hours. (*Id.*) For week ending 12/17/06, the fourth full week after his separation from ASI, plaintiff worked 23 hours. (*Id.*) Finally, for week ending 12/24/06, the fifth full week after his separation from ASI, plaintiff worked 25 hours. (*Id.*) Therefore, in the five full work weeks after plaintiff's separation from ASI, plaintiff worked an average of 30.5 hours per week.

Plaintiff's economic loss immediately upon his separation from ASI, therefore, is indisputable. As per the above, in the five weeks in which plaintiff worked *prior to* leaving ASI, plaintiff averaged 53.2 hours of work per week. In the five weeks in which plaintiff worked *immediately after* his separation from ASI, plaintiff averaged only 30.5 hours of work per week. Plaintiff's economic loss due to his retaliatory termination from ASI was, therefore, immediate and significant. Though plaintiff mitigated his damages by finding work after ASI, he certainly suffered damages from the moment of his separation.

### b. Plaintiff's Separation from NYCT Was Not For Cause, and Was Against the Industry's Collective Bargaining Agreement

Plaintiff separated from NYCT in or around January 7, 2007. Plaintiff continued to suffer damages *attributable to defendants* after his separation from NYCT, as well.

Plaintiff lost his employment at NYCT through no fault of his own. Courts have ruled that if a plaintiff gains subsequent employment after separation from a defendant,

[7]

plaintiff *has not failed to mitigate damages* against defendant if he lost the subsequent employment through no fault of his own. *See Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1168 (plaintiff fired from subsequent job for accident did not fail to mitigate damages because conduct was not willful or egregious), *amended*, 97 F.3d 833 (6th Cir. 1996))

Plaintiff's work with NYCT came to an end in January of 2007 (Exhibit F, p79:2-3) unjustifiably and without cause, as his separation from NYCT was against the union contract and was not reasonable based on disciplinary action doled out to other NYCT employees. As his separation from NYCT was against the union contract, it was certainly not foreseeable by plaintiff that he would lose his employment at NYCT due to his wholly justifiable actions. Therefore, plaintiff's mitigation efforts did not cease at NYCT.

This is indisputable for the following reasons. First, NYCT's stated reason for banning plaintiff was that he left work early, thus receiving a 'left work' or 'D' debit. Agosta, defendant Local 1814's very own witness, testified that one 'left work' debit cannot lead to termination. In fact, it is only after ten (10) such debits that a longshoreman is called in front of the Waterfront Commission to explain such debits:

> Q.      Okay. So what happens during that time frame, that specific time frame, what happens when an employee gets a D debit for leaving work early?
>
> Agosta. You get one debit, nothing happens at that point. (emphasis added) (Exhibit E, 11/18/14, p352:21-25)

[8]

In fact, it takes up to ten (10) separate debits to even have to account for the accumulation of such debits:

> Q. What about the tenth one?
>
> Agosta. You're called for a hearing.
>
> Q. So you're allowed ten D debits?
>
> Agosta. You're allowed ten C debits or D debits before you would be called to a hearing, you would be called to the absentee committee. (Exhibit E, 11/18/14, p353:16-21)

Further,

> Q. If an employer fires an employee for their first D debit, that's unjustified, correct?
>
> Agosta. I don't know anyone who was fired for one D debit. (Exhibit E, p354:6-8)

Agosta, Local 1814's very own witness, confirms that plaintiff's one D debit at NYCT certainly does not justify termination. Indisputably, plaintiff's separation from NYCT was not justified, as no other longshoreman would be terminated for one 'left work' debit. Plaintiff, therefore, satisfied his duty to mitigate despite the termination by NYCT.

### c. Plaintiff Further Mitigated his Damages By Calling In for Work Hundreds of Times in Which He Was Not Offered Any Work

Finally, besides searching for and finding work immediately after his separation from ASI, though suffering damages regardless, plaintiff made himself available for

[9]

industry work hundreds of days in which he was not offered any such work. This is further evidence of plaintiff's mitigation efforts and economic loss.

Local 1814 witness Agosta testified that an 'S Debit', as reflected on plaintiff's payroll records, indicates that plaintiff made himself available for work as per industry policy and practice, but wasn't called for a job.

| | |
|---|---|
| Q. | I'd like to direct your attention to S, "Code S available – not offered work." What does that mean… |
| AGOSTA. | That means he called for orders. He was in the shape in the morning and he - - he didn't have any work, they didn't call him for a job. |
| Q. | So that means he wanted to work that day, but there was nothing available for him? |
| AGOSTA. | Correct, and he was in the shape. He called up the prior day. (Exhibit E, 11/18/14, pp346-347:19-9) |

Defendant Union's Exhibit 19A confirmed that an 'S' code in plaintiff's payroll records confirmed that plaintiff made himself available for work but wasn't given any. (Exhibit H)[5]

Agosta acknowledged that between the period of 10/1/06 through 9/30/07, plaintiff's payroll records reflect that plaintiff had <u>fifty-three (53) 'S' debits</u>, meaning that plaintiff made himself available for work within the industry, but was not offered any. (Exhibit E., 11/18/14, p348:19) This encompassed the first year after the plaintiff lost his employment with ASI. (Exhibit E, 11/18/14, p348:10-19) (Def. Union Exhibit 20, 'NYSA RESPONSE 164')

---

[5] For all citations to Exhibit H please see Sabella's NYSA Employee Codes, attached to the Affirmation of Matthew J. Blit as Exhibit H.

[10]

Agosta further acknowledged that between the period of 10/1/08 through 9/30/09, plaintiff's payroll records reflect that plaintiff had <u>eighty-six (86)</u> 'S' debits, meaning that plaintiff made himself available for work within the industry, but was not offered any. (Exhibit E, 11/18/14, p349:2-7) (Exhibit I, 'NYSA RESPONSE 168')[6]

Agosta further acknowledged that between the period of 10/1/09 through 9/30/10, plaintiff's payroll records reflect that plaintiff had one hundred and twenty eight (128) 'S' debits, meaning that plaintiff made himself available for work within the industry for those amount of days, but was not offered any. (Exhibit E, 11/18/14, p349:8-11) (Exhibit I, 'NYSA RESPONSE 170')

Finally, Agosta acknowledged that between the period of 10/1/10 through 9/30/11, plaintiff's payroll records reflect that plaintiff had <u>seventy-seven (77)</u> 'S' debits, meaning that plaintiff made himself available for work within the industry for those amount of days, but was not offered any. (Exhibit E, 11/18/14, p349:2-7) (Exhibit I, 'NYSA RESPONSE 172')

Therefore, in the four years subsequent to plaintiff's separation from ASI, excluding the year in which plaintiff largely collected Workers' Compensation due to injury, plaintiff made himself available for work, but was not offered any, three-hundred-and-forty-four (344) times. Plaintiff certainly made efforts to mitigate his damages, but did not receive work through no fault of his own.

Due to the above, it is evident that plaintiff suffered significant economic loss due to defendant's actions, and attempted to mitigate such loss. Therefore, plaintiff

---

[6] For all citations to Exhibit I, please see Sabella's employe attendance records as maintained by NYSA, attached to the Affirmation of Matthew J. Blit as Exhibit I.

[11]

respectfully requests that this Court grant plaintiff judgment for damages against defendant ASI in an amount of $114,000, or no less than $24,000.

## V. PLAINTIFF RESPECTFULLY RESQUESTS A NEW TRIAL ON HIS CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT BASED UPON SEX AGAINST ASI

Since no jury verdict was rendered on plaintiff's claim for hostile work environment based upon sex, his civil action remains unresolved and pending before the Court. As such, plaintiff respectfully requests a pretrial hearing and a new trial on this cause of action.

Respectfully submitted,

Dated: December 17, 2014
New York, NY

LEVINE & BLIT, PLLC

Matthew J. Blit
350 Fifth Avenue, Suite 3601
New York, NY 10118
Tel. (212) 967-3000
mblit@levineblit.com